STEARNS SALT & LUMBER CO. *v.* DENNIS LUMBER CO.

1. SALES—WARRANTY—IMPLIED WARRANTY—ACCEPTANCE.
   In an executory contract for the sale of personal property, the implied warranty of quality or fitness does not survive acceptance of the goods, and it is the duty of the purchaser to inspect and reject, or pay the contract price.

2. SAME—SEVERABLE CONTRACT—ACCEPTANCE OF PART.
   In an action for the balance due on two cars of lumber, which plaintiff sold to defendant without an express warranty, where the defendant acted promptly in inspecting the lumber and tendered payment for the part accepted, and notified plaintiff that the rest was rejected, the court was not in error in instructing the jury that the contract was severable and defendant had the right to accept such as conformed to the warranty and reject the rest. STONE, OSTRANDER, and STEERE, JJ., dissenting.

Error to Kent; Perkins, J. Submitted April 15, 1915. (Docket No. 113.) Decided September 28, 1915. Rehearing denied September 27, 1916.

Assumpsit by the Stearns Salt & Lumber Company against the Dennis Lumber Company, a corporation, in justice's court, for goods sold and delivered. From a judgment for defendant plaintiff appealed to the circuit court. Judgment for defendant on directed verdict. Plaintiff brings error. Affirmed.

*Hatch, McAllister & Raymond,* for appellant.

*Travis, Merrick & Warner,* for appellee.

KUHN, J. On December 29, 1911, the defendant company placed an order with the plaintiff company by telephone for two car loads of a certain grade of

lumber, and followed this by letter confirming the same, which read as follows:

"Dennis Lumber Company.
          "Grand Rapids, Mich., 12-29-11.
"Stearns Salt & Lumber Company,
   "Ludington, Mich.
"*Gentlemen:*
   "Confirming conversation over the phone the other evening with Mr. Holland, at which time he booked our order for the two more cars of 4 in. No. 4 pine crating strips D2S to ¾ in., to be same quality as the last shipped us, we wish to inquire as to how soon you will be able to make shipment of these two cars.
   "Awaiting your reply, we are,
               "Yours very truly,
                    "Dennis Lumber Company."

To this communication the plaintiff company replied under date of December 30, 1911, advising that the lumber would be shipped at once.

On January 6, 1912, the plaintiff mailed to the defendant an invoice of the first car of lumber shipped, and on January 11, 1912, sent an invoice of the second car load shipped. The first car of lumber was placed for unloading February 19, 1912, and was unloaded on the following day. The other car was placed for unloading on February 21, 1912, and the unloading of that car was completed within two days, on February 23d. On the next day, February 24, 1912, defendant notified plaintiff of the rejection of part of the lumber received, by the following communication:

"Dennis Lumber Company.
          "Grand Rapids, Mich., Feb. 24, 1912.
"Stearns Salt & Lumber Co.,
   "Ludington, Michigan.
"*Gentlemen:*
   "We herewith hand you report on the two cars of pine crating as follows:
       B. & M. 61015—27,106 ft. of good
                    1,479 ft. of worthless culls

28,585 ft. total which shows
—a shortage of 32 ft.
O. C. L. 9114____25,540 ft. of good
2,395 ft. of worthless culls

27,935 ft. total.

"The writer has looked these culls over very carefully, and there is no doubt but that our customer has been more than fair in what he has taken. However, if you wish, we will have Mr. Tillitson go over the culls, or if your Mr. Holland can spare the time to go with us to look them over the next time he is down here, it will save any unnecessary expense in the matter.

"We are certainly surprised that any inspector could or would attempt to ship any such strips for No. 4, as they are so poor and rotten that they will hardly hold together and are absolutely of no value whatever.

"We herewith enclose statement and our check to balance account for these two cars.

"Yours very truly,
"Dennis Lumber Company."

The plaintiff company immediately replied that it would not consent to any loss on the car, and must have settlement in full. Further correspondence was had between the parties, and finally suit was brought to recover the sum of $50.75, the claimed balance due on the two cars in question, the value of the lumber rejected. Suit was started in justice's court, which resulted in a judgment in favor of the defendant, and on appeal taken to the circuit court the trial judge directed a verdict of no cause of action.

It is contended here that the circuit judge erred in holding and instructing the jury that the contract in question was severable, and that the defendant had a right to reject part of the lumber in question and accept the remainder. It is the contention of the plaintiff that the defendant had purchased these two cars of lumber, of one quality and grade, and as soon as

the cars arrived the defendant had a reasonable time in which to inspect the same and ascertain if they complied with the requirements of the contract as to quality and grade, and after such examination defendant was obliged to either accept or reject all of the lumber; and if he accepted a part of the lumber, and then used the same, he was obliged to pay the contract price of all of the lumber. Reliance is placed upon the cases of *Sisson Lumber, etc., Co.* v. *Haak,* 139 Mich. 383 (102 N. W. 946), and *Columbus & Hocking Coal, etc., Co.* v. *See,* 169 Mich. 661 (135 N. W. 920).

It is true that it is the rule of law in this State that in an executory contract for the sale of personal property, where there is an implied warranty, the warranty does not survive the acceptance of the goods, and it becomes the duty of the pu:.chaser to make an inspection and reject or pay the contract price, which proposition of law is fully sustained by the two Michigan cases above cited. But the question here is rather whether or not the contract in question is a severable one, and whether or not the defendant could, after inspection, in view of the rule of law here established, reject that part of the lumber which did not meet the specifications. The question of the right of the consignee to reject a portion of the shipment which is below grade or worthless, while accepting the greater part of the shipment, is not involved in the decision of the *Sisson Lumber Co. Case, supra,* and likewise in the *Columbus & Hocking Coal, etc., Co. Case, supra,* the entire cargo was of an inferior quality, and the consignee accepted the shipment of coal and attempted to make a settlement upon a reduced price because of the alleged inferior quality of the coal. No Michigan case has been called to our attention, nor have we been able to find such a case, in which the precise question here involved was under consideration.

In the case of *McFadden* v. *Wetherbee & Co.,* 63

Mich. 390 (29 N. W. 881), in which there was under consideration a contract for the delivery to a vendee of pine blocks of a specified quality, and the vendee had failed to reject the blocks at the time of delivery, although advised that they were defective, and paid for the same, this court said:

"The defendant had the right, at the time of the delivery, to reject any and all blocks not coming up to the standard of the contract; but, if it paid for them at that time, or afterwards, without rejecting any, although complaint was made of their being defective, the defendant nevertheless lost thereby the right in this suit to plead a breach of the contract as far as the blocks so paid for were concerned; nor would it authorize the rejection and nonacceptance of blocks thereafter to be delivered under the contract, without a showing that the blocks so offered to be delivered were also defective. No such showing was made."

So in the instant case, if the defendant had taken into possession the rejected lumber and assumed to dispose of it at a less price, as was done in the *Columbus & Hocking Coal, etc., Co. Case, supra,* there could be no question that under the law in this State the damages thus sustained could not have been recouped in an action to recover for the rejected lumber. But here the defendant moved promptly by notifying the plaintiff the very next day after the inspection of the rejection of the lumber in question.

In a similar case in Maryland, *Canton Lumber Co.* v. *Liller,* 107 Md. 146 (68 Atl. 500), the court held that the plaintiff had a right to accept lumber which was up to the grade contracted for, and that by so doing it did not accept the part which was below grade. In its opinion the court said:

"Unless it measured up to the specifications, it was of no practical value to the plaintiff for the only purpose for which it was ordered, and, not being a dealer equipped for resale, it was of little value to him for any purpose. He was compelled, in order to perform

his contract with the railroad company, to purchase without delay other lumber to replace such as should be rejected under proper inspection. Can it be supposed then that it was the intention of either of the parties that if one-half or one-quarter of the lumber passed the inspection, and the remainder was rejected, that the plaintiff could not use the former for the specific purpose for which it was bought, without being required to take also the rejected portion which he could not use? Such a conclusion is as irrational when attributed to the defendant as when attributed to the plaintiff, under all the circumstances of this case. And this construction is supported by the subsequent dealing of the parties with respect to the rejected lumber, which was accepted and removed from Keyser by the defendant. It is true that this alone would not be conclusive, and it would have comparatively little significance if accompanied by a declaration that the acceptance of the rejected lumber was only for the purpose of reducing thereby the damage sustained, but when unexplained, as in this case, the conduct is most significant of the intention of the parties. As illustrative of this view, it was said in *Richards* v. *Shaw,* 67 Ill. 222, that the modern rule is that the entirety of a contract of sale is severed by the buyer's receiving and retaining a part after the seller has refused or failed to deliver the residue of the specific quantity of goods bargained for.

"The case of *Holmes* v. *Gregg,* 66 N. H. 621 [28 Atl. 17], relied on by the plaintiff, is directly in point, and meets with our full concurrence. That was a sale of lumber shipped on cars in five lots, three of which were accepted and used by the defendants, and the others, not conforming to the order in quality, were rejected and piled in their yard, where they remained, subject to the plaintiff's order. The defendants seasonably informed the plaintiffs of their action, and tendered the price of the accepted lumber, and the court said: 'Without an express stipulation that the contract was or was not entire, the parties might have understood that it was severable in such a sense that the defendants could accept the lumber that conformed to the contract and reject the rest.' "

188 Mich.—45.

We are of the opinion that the trial court was correct in holding that the contract was a severable one, and no error was committed in so charging the jury.

In his reasons for directing a verdict the court also stated that thus severing the contract was in accordance with a custom universal among lumber dealers, and it is contended that this was error because, it is. claimed, the testimony in this respect falls far short of establishing such a universal custom as to warrant this conclusion on the part of the court. Being of the opinion that the court arrived at a proper conclusion with respect to the other question, and properly directed a verdict for that reason, it is unnecessary for us to determine whether under the facts in this case the testimony was sufficient to justify a conclusion that a universal custom had been established.

The judgment is affirmed.

BROOKE, C. J., and BIRD and MOORE, JJ., concurred with KUHN, J.

OSTRANDER, J. (*dissenting*). The first letter which appears in the record in respect to the matter in controversy was written by the defendant to the plaintiff December 29, 1911, which recites that it confirms a conversation over the phone between plaintiff's representative and defendant's representative, "at which time he booked our order for the two more cars of 4 in. No. 4 pine crating strips D2S to ¾ in. to be same quality as the last shipped us," and inquiring when shipment would be made. In answer the plaintiff on December 30th wrote the defendant:

"Your favor of the 29th received, relative to two cars 4 in. pine strips, and we are pleased to advise you we are in position to get these on the way to you at once."

With this letter when a statement on an order blank of the plaintiff, dated December 30, 1911, describing

two cars 1x4 pine crating S2S to ¾ in., $13, upon which was printed:

"The above is a copy of your order as we understand it.  If incorrect wire us immediately."

The first car was shipped January 6, 1912, on which day the invoice of the car sent to the defendant is dated.  The invoice is:

"Pine crating S2S to ¾ 1x4 28617  13.00........ 372.02
        Less freight."

The other car was shipped January 11th, the invoice dated that day and sent to defendant, and the invoice describes:

"Pine crating S2S to ¾ 1x4 27933  13.00........ 363.13
        Less freight."

These invoices and the cars were received by the defendant, and the cars were placed by them with their customers.  They paid $400 on account before the arrival of the cars.  Defendant bought the lumber to be sold again.  The cars were unloaded by the customers, and defendant wrote plaintiff on February 24th, giving a report of the two cars, showing that out of the first car 1,497 feet and out of the second car 2,395 feet had been rejected as worthless culls. Accompanying this report and statement was defendant's check to balance the account as per the statement.  On February 28th, plaintiff wrote the defendant acknowledging receipt of the said statement, saying:

"Now in reply will say that we did not sell you a No. 4 grade.  Our order confirming this deal reads 1x4 pine crating, which means No. 4 and 5 mixed. We cannot stand any loss whatever on these two cars and we must have settlement in full."

Further correspondence followed, defendants refused to pay, and this suit was brought to recover the balance of $50.75.  The cause came on for trial in the

circuit court, on an appeal from justice's court, and among other testimony offered on the part of the defendant in that court was some which the defendant asserts tended to and did prove a custom of the lumber trade permitting the buyer to accept part of a car without accepting all of it. The testimony further tended to prove the facts above stated, but no point appears to be made by counsel upon plaintiff's denial that it did not sell No. 4 grade. In argument the sale is treated as one upon implied warranty. The circuit court directed a verdict for the defendant, saying, among other things:

"I think it satisfactorily appears that the contract in this case was a severable contract, and, further, that according to the custom universal amongst lumber dealers, the conduct of the defendant company was justified, and when an amount was sent to the defendant covering the contract price of the grade of lumber accepted and the check retained by the plaintiff company, that the defendant had done all it was required to do."

The testimony fails to prove a custom known to plaintiff, and has little tendency to prove a custom in Grand Rapids, where the lumber in question was received. What effect the court gave to the fact that plaintiff kept the check sent by defendant with its statement is not apparent. The money was due to it, and, as it contends, was a partial payment only.

That the court was wrong in holding the contract severable is, I think, clear. It was not, in terms, severable. The sale was a sale of a car load, and a car load was tendered in performance. The tender of a few strips or of half a car load would not have answered the seller's promise. The action of the buyer in accepting a few or many strips, or boards, would not sever the contract. Defendant, with no notice to plaintiff, turned the lumber over to a customer before inspection. Submission or a lawsuit were the

alternatives presented by the buyer to the seller, as they would be in every similar case.

The Maryland case, cited by my Brother KUHN, was not in its facts like the case at bar. In that case lumber to conform to blue-print and other specifications was agreed to be delivered—409,943 feet in all. To the knowledge of both parties it was to be used in the construction of a certain building, and plaintiff, the buyer, claimed it was subject to the inspection of the agents of the railroad for which the building was to be constructed. Some 56,000 feet were used, and the remainder rejected, and the seller removed the rejected lumber. The buyer purchased the necessary material elsewhere at a higher price and sued for his damages. The court refers approvingly to a New Hampshire case. Examination discovers that it is a case in which five lots of lumber of different dimensions and prices were sold. Three lots were accepted and used, the others, "not conforming to the order in dimensions, quality, quantity, and price, were rejected," of which the sellers were seasonably informed. The Maryland court also refers to a Maryland case where the sale was of three negroes, warranted to be sound, and it was held that the contract was severable. None of the cases is like the one at bar.

Whether a particular contract is entire or separable is a question of intention, which intention is to be determined by the language used by the parties and the subject-matter of the agreement. I quote, as applicable to the case presented upon this record, the language of the supreme court of Iowa in *Pacific Timber Co.* v. *Windmill & Pump Co.*, 135 Iowa, 308, 310 (112 N. W. 771), as follows:

"It is very difficult to lay down a rule which will apply to all cases, and consequently each case must depend very largely upon the terms of the contract involved. In this case we think it almost conclusive

that the parties did not intend the contract in question to be separable. It is hardly conceivable that the plaintiff, living more than 2,000 miles away from the defendant's place of business, should contemplate the shipment of a car load of lumber, although consisting of pieces of different dimensions, with the understanding or intention that each piece of timber so shipped should constitute the basis of an independent contract, so that the consignee should be at liberty to reject any part of the lumber so shipped and retain the balance; nor is there anything in the contract itself indicating that the defendant had any thought that it was to receive any other than an entire car."

For the reasons stated, I disagree with the conclusion of my Brother KUHN, and think the judgment should be reversed, and a new trial granted.

STONE and STEERE, JJ., concurred with OSTRANDER, J.

The late Justice MCALVAY took no part in this decision.