WILMINGTON TRUST COMPANY, a corporation existing under the laws of the State of Delaware, Trustee by appointment of the Chancellor under the Last Will and Testament of William Forrest, Deceased,

*vs.*

MARGARET CARROW.

*New Castle, July 8, 1924.*

While at law a lease, made by trustee, which is unreasonable and clearly beyond needs of trust, is good, court of equity may, in exercise of its supervisory jurisdiction over trusts, decree cancellation of such lease.

Facts *held* to show lease, by deceased trustee to his wife of real estate, during life of trust, which was for the lives of beneficiaries and twenty-one years, at annual rental of one dollar, so unreasonable as to warrant cancellation, at suit of succeeding trustee; reasonableness being determined with regard to character of property, purpose of trust, local custom in reference to similar property, and all conditions attending execution.

A trustee is prohibited absolutely from purchasing or leasing trust property, and this prohibition invalidates lease to wife of trustee.

BILL TO SET ASIDE LEASE. William Forrest died in May, 1894, leaving a last will and testament by which he devised his

real estate to William Crawford and James Carrow, the husband of the defendant, in trust "to rent and demise the said real estate, to collect the rents and apply the same as follows, that is to say: To the payment of taxes and other legal assessments thereon, to keeping the premises in repair, to any reasonable charges and expenses in carrying out the trust" and to divide the residue of said rents equally among his children living at the time of his death and to the issue of any child then deceased. On January 23, 1902, the trustees named in the will leased a certain unimproved lot of land in the City of Wilmington to the defendant at the annual rental of one dollar, the lessee to pay all taxes assessed thereon. The term of the lease extended "from January 23, 1902, until twenty-one years after the death of the longest liver of William Forrest's children." The term thus specified is co-extensive with the utmost duration of the trust. The children of the testator are not yet all dead. The lease has thus run for twenty-two years and under its terms is to continue for an indefinite time of something more than twenty-one years in the future.

The two trustees are now deceased and the complainant is by appointment their successor in office. The bill charges that while the lease was made in the name of the defendant, Margaret Carrow, the premises described therein were as a matter of fact used by her husband who constructed thereon a certain building which he used as a carpenter shop or for some similar purpose up until the time of his death.

The answer admits the execution of the lease as charged; avers that the building erected on the premises was a stable constructed at the expense of Mrs. Carrow; that while her husband used the building it was only for the purpose of storing therein lime, cement and other materials used in making repairs to the properties composing the trust estate and not for the benefit of James Carrow, the trustee, or of his wife the defendant lessee; that the building was so used until about six months prior to Mr. Carrow's death when the defendant secured a sub-tenant thereof at a money rental which under the evidence appears to be at the rate of twenty dollars per month. The answer further avers that the defendant has regularly paid the annual rental of one dollar per year as stipulated in the lease, but that she has not paid the

taxes as agreed for the reason that the premises have never been assessed for taxes.

The bill seeks a decree declaring the lease void and directing the defendant to surrender the premises. It further prays that the defendant may be decreed to pay a reasonable rent from the date of the lease to the date of the decree.

The cause was heard on bill, answer and testimony taken orally before the Chancellor.

*William S. Hilles,* for the complainant.

*J. Frank Ball,* for the defendant.

THE CHANCELLOR. Rule 190 of this Court provides that when a new trustee has been appointed in place of a deceased trustee, he shall examine the acts and conduct of his predecessor in administering the trust and report to the Chancellor any delinquency or maladministration of such predecessor. The complainant, within a reasonably short time after having qualified as trustee of this estate, discovered the existence of the lease now sought to be avoided and thereupon in the performance of its duty filed the present bill which presents the facts touching the lease and seeks a correction of what it conceives to have been an improper act in its execution.

1. The first reason urged by the complainant is that the lease was unreasonable, unusual and for an excessive term. The lot embraced within the lease was a piece of unimproved real estate. It was not worth over two hundred dollars. The rent required to be paid was one dollar per year and payment by the lessee of taxes assessed against it. The latter obligation at the date of the lease was of no moment for the lot was not assessed. The trustees knew this. It has never in the twenty-two years intervening been assessed. If it had been assessed at the full value the annual taxes and rental combined would not have exceeded four or five dollars. So much importance is not to be attached to the rate of rental named in the lease as to the unusual not to say extraordinary length of time during which the lease under its terms was to continue. The land was a vacant lot unburdened with taxes. It was costing the estate nothing. While it may be

conceded for the purpose of argument that one dollar a year was not an unreasonably low rental for the trustees to demand, yet it is impossible to discover any rational explanation for tying the premises up on a lease for the entire duration of the trust—a period which has already extended over twenty-two years and may in all probability run to thirty or fifty years more. What could be made out of the premises is demonstrated by the fact that a cheap shack erected thereon and used as a stable is now being rented for two hundred and forty dollars a year. If the defendant had engaged in the lease to place a suitable structure thereon her situation, in the present aspect of the case, would be improved. But nothing of the kind was required.

The reported cases which deal with the power of a trustee to make leases of real estate and with the nature of the terms which a court of equity will permit to be written into such leases, present much discussion concerning the power of trustees to burden the estate beyond the life of the trust, a question which is not here involved. But no case to which my attention has been called raises any doubt upon this point, viz., that leases made by trustees must conform to what is reasonable under the circumstances. In determining what is reasonable regard is to be had to the character of the property, the purpose of the trust, the local custom in reference to similar property and all the conditions attending the execution of the lease. While at law a lease made by a trustee which is unreasonable and clearly beyond the needs of the trust is nevertheless good, yet a court of equity may in the exercise of its supervisory jurisdiction over trusts decree the cancellation of such a lease and unfetter the land from the burden improvidently placed upon it by the trustee. The reported cases and the text-writers unite in support of these propositions. *Hubbell v. Hubbell*, 135 *Iowa*, 637, 113 *N. W.* 512, 13 *L. R. A. (N. S.)* 496, 14 *Ann. Cas.* 640; *Hutcheson v. Hodnett, et al.*, 115 *Ga.* 990, 42 *S. E.* 422; *Greason v. Keteltas*, 17 *N. Y.* 491; 39 *Cyc.* 387; 2 *Perry on Trusts & Trustees*, (*6th Ed.*) §§ 484, 528, 530; 26 *R. C. L.* 1301. In the foregoing citations the authorities which bear on the question are collected and reviewed. No discussion of them is here necessary.

The facts in connection with the lease in question in this cause are clearly such as to call for the remedial application of the

principle defined in these authorities. The lease was at a nominal rental. Had it run from year to year it may have withstood the test of reasonableness. But when this rental was stipulated for over the entire life of what bade fair to be a very long trust, the trustees were blind to the possibilities of the future. They assumed that conditions would remain static and that in no event could the land be made to yield more than a dollar a year during the existence of the trusteeship. As before indicated there were no pressing circumstances jeopardizing the trust estate which made this very unusual lease seem advisable. Whether as a matter of fact the motive of the trustees was to benefit one of them as contended by the complainant, I shall not pause to discuss. I shall assume the contrary. The face of the transaction is enough to convince one of its unreasonableness, however honest may have been the motive of the trustees in consummating it.

This ground is sufficient in itself to justify a decree avoiding the lease. But the next point is equally so.

2. The point made under this head is that the lease having been made to the wife of one of the trustees, the law declares it to be fraudulent. The rule is well settled in this State that a trustee is prohibited absolutely from purchasing the property entrusted to his care. *Van Dyke, et al., v. Johns,* 1 *Del. Ch.* 93, 12 *Am. Dec.* 76; *Downs, et al., v. Rickards, et al.,* 4 *Del. Ch.* 416; *Eberhardt, et al., v. Christiana Window Glass Co., et al.,* 9 *Del. Ch.* 284, 81 *Atl.* 774; *In re Wheeler's Estate,* 11 *Del. Ch.* 469, 101 *Atl.* 865. Chancellor Bates in the case from 4 *Del. Ch.* 416, uses this language:

"In view of the difficulty of unraveling fraud in these transactions, the policy of the rule is, to exclude the possibility of it by making the prohibition absolute."

The same considerations which underlie the prohibition which the law erects against purchases by trustees from themselves condemn with equal force the execution by trustees to themselves of leases covering the estate entrusted to their control. It was so held in *Ex parte Hughes,* 6 *Ves.* 617. It could not in reason be otherwise.

If the lease in question had been made by Messrs. Crawford and Carrow, the former trustees, to Mr. Carrow instead of to his

wife, it would undoubtedly be invalid.  Does the circumstance that the lessee was the wife of the trustee alter the situation?  It does not.  The prohibition extends equally to the wife.  *Bassett v. Shoemaker*, 46 *N. J. Eq.* 538, 20 *Atl.* 52, 19 *Am. St. Rep.* 435; *Scottish-American Mortgage Co. v. Clowney*, 70 *S. C.* 229, 49 *S. E.* 569, 3 *Ann. Cas.* 437; 1 *Perry on Trusts and Trustees*, 321; 39 *Cyc.* 373.

Let a decree be drawn directing a cancellation of the lease and a surrender of the possession.  As to what, if anything, should be decreed to be paid by the defendant as a reasonable rental and as to whether she shall be allowed any credit on account of the structure erected by her on the land, are questions which have not been argued and which on the present state of the evidence, I am unable to pass upon.  The parties may be heard on these questions if desired.