EQUITABLE TRUST COMPANY, a Corporation of the State of Delaware, Executor of the Last Will and Testament of Helen Rogers Bradford, Deceased,

*vs.*

DELAWARE TRUST COMPANY, a Corporation of the State of Delaware, Trustee under the Will of Annie Rogers duPont, Deceased, Shapdale, Inc., a Corporation of the State of Delaware, and others.

*New Castle, September 8, 1947.*

*James R. Morford* and *Thomas Cooch,* of Marvel & Morford, for Equitable Trust Company, complainant.

*Clarence A. Southerland* and *David F. Anderson,* of Southerland, Berl & Potter, for Delaware Trust Company, Trustee under the will of Annie Rogers duPont, deceased, Shapdale, Inc., Marion duPont Scott and William duPont, Jr.

*Stewart Lynch,* for Academy of the Visitation.

*Alexander L. Nichols,* of Morris, Steel, Rodney, Nichols & Arsht, for Vestrymen and Church Wardens of the Swedes Lutheran Church, called Trinity Church, in the Borough of Wilmington, and the Trustees of the Protestant Episcopal Church of the Diocese of Delaware.

HARRINGTON, Chancellor: Delaware Trust Company as trustee under the will of Annie Rogers duPont, deceased, is the legal owner of an undivided four-ninths interest in the Theodore Rogers property, known as "Dunleith", in New Castle Hundred, New Castle County, on the road leading from Wilmington to New Castle, and where Helen Rogers Bradford resided during her lifetime. Delaware Trust Company, as such trustee, also holds the legal title to an undivided two-thirds interest in parcels Nos. 1 and 3, described in the bill. Shapdale, Inc., a corporation of this state, owns an undivided two-ninths interest in Dunleith and an undivided one-third interest in Nos. 1 and 3. The latter parcels are on the Northerly side of the road leading from Wilmington to New Castle, in New Castle County, between the Hares Corner Road and the Old Ferry Road. Helen Rogers Bradford had a life interest in the remaining undivided one-third part of Dunleith, together with a general power of appointment of the remainder in that interest. She had no interest in Nos. 1 and 3.

On February 6, 1943, Helen Rogers Bradford entered into an agreement with Delaware Trust Company, trustee under the will of Annie Rogers duPont, deceased, and with Shapdale, Inc., which purported (1) to give and grant her at any time while she lived, and to the executor named in her last will and testament, the exclusive right and privilege to purchase all the right, title and interest of Delaware Trust Company, trustee, and of Shapdale, Inc., in Dunleith, in Nos. 1 and 3, and in the furniture and fixtures and other personal property at Dunleith; (2) if that option should not be exercised by Helen Rogers Bradford during her lifetime, her excutor could exercise it within the period of six months after her death; and (3) the purchase price

was to be determined at the time of the exercise of the option by an appraisal by real estate operators, one of whom was to be appointed from the City of Wilmington by Delaware Trust Company, trustee, and Shapdale, Inc., and another by Helen Rogers Bradford, or by her executor. The two appraisers so appointed were to go on the premises and appraise the same at their fair market value. If they should fail to agree, they were to forthwith appoint a third real estate operator who would likewise view the property. The valuation fixed by any two of the appraisers was to bind the parties as to its fair market value. There was a similar provision with respect to the valuation of the personal property at Dunleith by arbitrators. Helen Rogers Bradford died July 4, 1944, without having exercised the option. By item IV of her will she, however, directed her executor to exercise it and to purchase the property and interests in property covered by the contract of February 6, 1934. On October 11, 1944, Equitable Trust Company, the executor named in her will, therefore, notified Delaware Trust Company, trustee, and Shapdale, Inc. in writing that it elected to exercise the option to purchase, pursuant to the direction of the will of the textatrix, and was ready to name an appraiser as directed by the contract. Delaware Trust Company, trustee, and Shapdale, Inc., however, questioned the validity of the option agreement and refused to comply with any of its provisions, including the appointment of an appraiser to aid in valuing the property. Though the payment of $5.00 was recited in the contract, there was no real consideration for it. A substantial part of the real estate covered by the option agreement is the subject of condemnation proceedings initiated by the United States Government, and pending in the District Court for the United States for the District of Delaware. By an order entered by the court on March 19, 1943, judgment was entered on the declaration of taking by the United States, whereby it obtained a leasehold interest in the real estate covered by the condemnation proceedings for the purpose of constructing a defense housing project. The

period of that interest was for one year, with the right of the United States to renew from year to year for the duration of the war emergency as determined by the President, and three years thereafter, together with its right to remove all improvements constructed thereon by it at the termination of such use. The United States constructed and erected a defense housing project on the land, and continues to use and occupy it. The value of the leasehold interest condemned has never been determined by the court, and there is no indication when the United States will surrender it, or whether it will remove the improvements which have been placed on the land. Furthermore, it is impossible at this time to determine the maximum period during which it may continue to hold its rights, as the duration of the war emergency has not yet been determined by the President. At the hearing, a real estate operator of the City of Wilmington, an expert on real estate appraisals, testified that by reason of the condemnation proceedings and the uncertainty as to the length of time the United States would continue to occupy the land and whether it would remove the improvements placed thereon at the termination of the occupancy, it was impossible to make any appraisal of the fair market value of the property covered by the option agreement as of October, 1944, when Equitable Trust Company as executor sought to exercise it. This testimony was not denied.

The will of Annie Rogers duPont named Delaware Trust Company the trustee of her residuary estate; the seventh item provided:

"I authorize and empower the said Trustee to demise, care for and manage the real estate constituting the trust and collect the income thereof, and from the income of the trust estate pay for the maintenance and improvement of the real estate; and also in its discretion to sell at any time at public or private sale all or any portion of my estate and property, either during the continuance of the trust, or for the purpose of distributing the trust property on and after the termination of the trust, and to convey and transfer the property so sold to the purchaser free of any trust and without liability on his part as to application of the purchase money, the proceeds of

such sale to become a part of the principal of the said trust and the income derived therefrom be held and applied as herein provided respecting the rest of my trust estate, and with like powers as to investment, reinvestment, collection and disposal thereof as hereinabove directed."

Delaware Trust Company as trustee was, therefore, merely given a general power to sell the trust property, though the sale could be made either publicly or privately.

At the hearing, the Academy of the Visitation denied the jurisdiction of this court to entertain a bill for instructions, and claimed that as the intended meaning of the decedent's will was not questioned, a separate bill against the other parties to the option contract for specific performance was the complainant's appropriate remedy. I am unable to agree with that contention. The right of this court to determine the executor's powers under the decedent's will, and in view of the parties to the proceeding, to give the appropriate relief is an incident of the general jurisdiction of equity over trusts. *Hoagland v. Cooper,* 65 *N.J.Eq.* 407, 56 *A.* 705; *Bowers v. Smith,* 10 *Paige* (*N.Y.*) 193; 4 *Pomeroy Eq. Jur.,* (5th ed.), §§ 1155, 1156; see also *Glanding v. Industrial Trust Co.,* 28 *Del. Ch.* 499, 45 *A.2d* 553, 555; *Theisen, Adm'r., v. Hoey, et al.,* 29 *Del. Ch.* 365, 51 *A.2d* 61.

The complainant as executor of Helen Rogers Bradford, deceased, is directed to use funds of the estate held by it in a fiduciary capacity to purchase real property and interests in real property, covered by the option contract. Its ability to carry out that direction is, however, denied. Moreover, the rights of legatees may be materially affected by the result of the controversy because of the probable insufficiency of funds to exercise the option and to pay all the legacies in full. *Christy, v. Sharpe,* 11 *Del. Ch.* 28, 95 *A.* 299, is not inconsistent with this conclusion. In that case, the decision was based on the theory that by statute the Orphans' Court had exclusive jurisdiction to order a sale of the decedent's real estate.

Furthermore, the complainant as executor seeks instructions with respect to the rights of the Academy of the Visitation under a bequest of "the collection of antique furniture now at 'Dunleith'." The determination of that question is within the jurisdiction of this court. The case, therefore, comes within the general rule that when a court of equity has obtained jurisdiction over some portion of a controversy, it will usually determine the whole matter if relief is sought by the proper pleadings. *Root v. York Corp.*, 28 *Del. Ch.*, 203, 39 *A.2d* 780; *Wright v. Scotton*, 13 *Del. Ch.* 402, 121 *A.* 69, 31 *A.L.R.* 1162; 1 *Pomeroy Eq. Jur., supra,* § 237 (c).

The grant of an option to purchase is neither a sale nor an agreement to sell property. *Loud v. St. Louis Union Trust Co.*, 313 *Mo.* 552, 281 *S.W.* 744; *Buder v. New York Trust Co.*, (2 *Cir.*), 82 *F.2d* 168, 104 *A.L.R.* 1035.

Ordinarily, the grant of that right is not essential to the exercise of a power of sale, and a fiduciary with a mere general power, therefore, cannot grant a future option to buy the property. *Clay v. Rufford*, 64 *Eng. Reprint* 1337; *Oceanic Steam Navig. Co. v. Sutherberry*, 1880, 16 *Ch. Div.* 236; *Hickok v. Still*, 168 *Pa.* 155, 31 *A.* 1100, 47 *Am.St.Rep.* 880; *Moore v. Trainer*, 252 *Pa.* 367, 97 *A.* 462; *In re Armory. Board*, 29 *Misc.* 174, 60 *N.Y.S.* 882; 2 *Scott on Trusts,* § 190.8; *Restatement Trusts,* § 190k. He is usually expected to use judgment and discretion with respect to the adequacy of the price at the time of the exercise of the power of sale, and not at some prior time when values might have been quite different. *Clay v. Rufford, supra; Hickok v. Still, supra;* 3 *Bogert on Trusts and Trustees,* § 741; 2 *Scott on Trusts,* § 190.8; *Restat. Trusts,* § 190k. The grant of an option is not consistent with that duty. *Moore v. Trainer, supra;* 3 *Bogert on Trusts and Trustees,* § 741. In most of the reported cases, the purchase price was fixed when the option was granted (*Clay v. Rufford, supra; Oceanic Steam Navig. Co. v. Sutherberry, supra; Cozard v. Johnson,* 171 *N.C.* 637, 89 *S.E.* 37), but the general principle is

equally applicable if the price is to be fixed by a subsequent appraisal. *Restat. Trusts,* § 190k.

It may, however, be proper for a fiduciary with a general power of sale to grant an option to purchase property if a sale cannot be otherwise advantageously made and it, therefore, seems prudent to do so. *Loud v. St. Louis Union Trust Co., supra; Crown Co. v. Cohn,* 88 *Or.* 642, 172 *P.* 804; *Restat. Trusts,* § 190k; 3 *Bogert on Trusts and Trustees,* § 741; 2 *Scott on Trusts,* § 190.8. In other words, if the choice is between a practical inability to dispose of the trust property and the giving of an option to buy it, which may result in a sale at an advantageous price, the courts will often construe the language of the power somewhat liberally. *Id.* Logically, it would seem that economic advantages to the trust estate, such as agreements to improve the property, would merely affect the reasonableness of the terms of the option contract, and not the trustee's actual powers under the trust instrument. *Moore v. Trainer, supra;* see also *Wilmington Trust Co. v. Carrow,* 14 *Del. Ch.* 290, 125 *A.* 350. Few, if any, of the cases, however, make that distinction clear. *Loud v. St. Louis Union Trust Co., supra; Connely v. Haggerty,* 65 *N.J.Eq.* 596, 56 *A.* 371, affirmed 68 *N.J.Eq.* 794, 64 *A.* 1133.

At any rate, my conclusion is that the evidence does not bring this case within the exception to the general rule governing the grant of options by fiduciaries with general powers of sale, and the contract is, therefore, invalid as to Delaware Trust Company, trustee, and cannot be carried out by the complainant.

Conceding that the trust property consisted entirely of undivided interests and was unproductive, it does not necessarily follow that it could only be sold advantageously by means of an option which ran during the remainder of Mrs. Bradford's life after February, 1934 and for six months after her death. It does not appear that any effort was made to sell to anyone else, or even to Helen

Rogers Bradford on any other terms. Nor did any substantial economic advantage accrue to the trust estate from the contract. Mrs. Bradford agreed to pay the taxes assessed against the property during the option period, but the evidence does not even show how much they were. While the facts need not be considered in detail, the more reasonable inference is that the option contract was in effect a family arrangement, largely for the benefit of Helen Rogers Bradford. The stock issued by Shapdale, Inc., a corporation of this state, was for the most part, if not entirely, owned by William duPont and Marion duPont Scott, his sister, relatives of the decedent, and the persons primarily interested in the trust estate; but there are other possible future interests which must be protected, whatever the value of the property might be. The uncertainty as to the present value of that part in the possession of the United States government may be of little importance in determining the case, but it tends to emphasize the reason for the general rule governing the grant of options by fiduciaries.

Delaware Trust Company, as trustee, executed the contract, but a fiduciary is not estopped to question its powers. See *Wilmington Trust Co. v. Carrow, supra; Restat. Trusts,* § 310; 3 *Bogert on Trusts and Trustees,* § 713.

The next question to be determined is whether the option contract is divisible or entire. Whether, if it is invalid with respect to the property rights belonging to the duPont trust estate, it is still valid as to Shapdale, Inc., another party thereto.

The contract granted to Helen Rogers Bradford, and to her executor, the privilege to purchase "all the rights, title and interest owned by said Delaware Trust Company, Trustee as aforesaid, and Shapdale, Inc., in and to" the real and personal property described therein. It also provided that the purchaser should pay to the grantors "such part of the appraised value of said real and personal property

as is represented by the respective interests therein." It further provided that the optioners should merely convey such title as they might have and without any warranty with respect to "the quantum or quality of their title and interest."

Whether a contract is divisible or entire is a question of intent which must be determined from the terms and subject matter of the contract, together with any pertinent explanatory circumstances. *Orenstein v. Kahn,* 13 *Del. Ch.* 376, 119 *A.* 444. "If there be a single assent to a whole transaction, involving several things or several kinds of property, a contract is always entire." *Orenstein v. Kahn, supra;* 17 *C.J.,* 788, 25 *C.J.S., Damages,* § 42. *Stearns Salt & Lumber Co. v. Dennis Lumber Co.,* 188 *Mich.* 700, 154 *N.W.* 91, 2 *A.L.R.* 638, 645.

Standing alone, a provision apportioning the consideration to and among the owners of the various property rights to be conveyed may be an important element in determining that question, but other pertinent provisions in the contract must also be considered in determining what was intended. *Orenstein v. Kahn, supra.*

In support of the contention that the option contract was entire and could not be enforced in part, it is said that it purported to give Helen Rogers Bradford and her executor the right to consolidate the various outstanding interests in the Rogers family real and personal property. See *Hartford-Connecticut Trust Co. v. Cambell,* 95 *Conn.* 399, 111 *A.* 864; *Rollyson v. Bourn, et al.,* 85 *W.Va.* 15, 100 *S.E.* 682; *Fairey v. Strange,* 112 *S.C.* 155, 98 *S.E.* 135. If the contract had been valid as to the trust estate, Mrs. Bradford, or her executor, could have acquired the virtual control of Dunleith as she already had a life interest in an undivided one-third part thereof and the general power to appoint the remainder absolutely by will. She owned no interest in the adjoining parcels 1 and 3, but could have likewise acquired all of the various original interests in them. It

does not appear that the rights which could have been acquired in the personal property in her possession, and in which she had an interest, would be so complete, but especially in view of the provision in the contract requiring both Delaware Trust Company, trustee, and Shapdale, Inc., to participate in the appointment of one of the contemplated appraisers, my conclusion is that an entire and indivisible contract was intended. See *Hartford-Connecticut Trust Co. v. Cambell, supra; Rollyson v. Bourn, et al, supra; Fairey v. Strange, supra.* The option contract is, therefore, invalid as to Shapdale, Inc., and cannot be enforced by the complainant, the executor of the decedent. But even if the contract were divisible, and, therefore, valid as to Shapdale, Inc., specific performance could not be decreed against it. Under the terms of that instrument, the purchase price could only be determined by an appraisal, and this court could not compel the selection of a person to carry out that provision. *Electric Research Products v. Vitaphone Corp.,* 20 *Del. Ch.* 417, 171 *A.* 738; *Milnes v. Gery,* 14 *Ves.Jr.* 399, 33 *Eng.Reprint* 574; *Simmons v. Crew,* (4 *Cir.*), 84 *F.2d* 82, 88; 1 *Williston on Sales,* (2d ed.), §176; 1 *Cornell Law Quarterly,* 225.

An order will be entered in accordance with this opinion.