**C. John PALUMBO, Plaintiff,**

v.

**Dorothy Mae EWING, individually and as Executrix of the Estate of Charles M. Ewing, and Wilmington Savings Fund Society, a Delaware corporation, Defendants.**

Civ. A. No. 81–257.

United States District Court, D. Delaware.

May 7, 1982.

Frank J. Gentile, Jr., Wilmington, Del., for plaintiff.

George F. Gardner, III, of Morris, Nichols, Arsht & Tunnell, Dover, Del., for defendant Dorothy Mae Ewing.

Arthur W. Koffenberg, Jr., and John R. Weaver, Jr., of Keith & Koffenberg, Wilmington, Del., for defendant, Wilmington Sav. Fund Society.

OPINION

CALEB M. WRIGHT, Senior District Judge.

I. JURISDICTION

Federal jurisdiction in this case is premised on 28 U.S.C. § 1332. The plaintiff is a citizen of the State of Maryland. Defendant Ewing is a citizen of the State of Delaware, and defendant Wilmington Savings Fund Society ("WSFS") is a Delaware corporation. The amount in controversy is in excess of $10,000 exclusive of interest and costs.

II. FACTS

This action for rescission of a contract arises out of a real estate transaction involving the purchase and conveyance of three parcels of land together with improvements, and the granting of an option to purchase a fourth improved parcel. The land is located in Duck Creek Hundred, Kent County, Delaware.

The transaction was arranged by Philip Hall, a real estate broker who was acquainted with both the plaintiff and defendant Ewing. Hall was aware that Mrs. Ewing had fallen behind in her mortgage

payments to defendant WSFS on some of the property at issue, and that such property was available for sale. Plaintiff Palumbo had expressed to Hall an interest in acquiring realty, and Hall apprised Palumbo of the availability of the Ewing property.

Negotiations between Palumbo and Ewing, conducted through Hall, culminated in an Agreement of Sale (the "Agreement") dated March 28, 1980. The Agreement provided for the sale and conveyance of three parcels of land owned by Mrs. Ewing to the plaintiff in consideration of the sum of $250,000. Parcels 2 and 3 were contiguous and were improved by an office building and stores which formed part of the Garrisons Lake Shopping Center. Parcel 1 consisted of vacant land to the south of the shopping center.

The transaction was made contingent on the conditions set forth in paragraphs A, B and C of the Agreement. Paragraph A provided that the mortgages in effect between defendants WSFS and Ewing on Parcels 2 and 3 were to be transferred under their existing terms and conditions to the buyer, Palumbo.

Paragraph B related to a fourth parcel, which was part of the Garrisons Lake Shopping Center and consisted of land and a building thereon known as Brand Name Stores. By the terms of paragraph B, Palumbo was granted, in consideration of the sum of $1,000, an exclusive option (the "Option") to purchase the Brand Name property for $160,000. The term of the Option was to be eighteen months and it was provided that, "Title to be good marketable fee simple title free and clear of all liens and encumbrances."[1] The paragraph further provided that Mrs. Ewing was to furnish to the plaintiff a certificate of zoning from Kent County which would enable Palumbo

to use the second floor of the Brand Name Stores building for apartments.

Paragraph C made the transaction subject to the approval of the Delaware Trust Company, which held Mrs. Ewing's mortgage on the Brand Name property.

The parties settled on parcels 1, 2 and 3 on June 25, 1980. In connection with the settlement, the plaintiff executed two collateral bonds, in a total amount of $229,364.99, to defendant WSFS. The bonds were intended to guarantee payment to WSFS in the event that Palumbo defaulted on the mortgages he assumed from the Ewings. The interest rates on the assumed mortgages were lower than the prevailing market rate.[2] Palumbo also executed an indemnity bond to defendant Ewing in connection with the settlement, through which Mrs. Ewing would be held harmless in the event that the plaintiff defaulted on the mortgages.

In anticipation of exercising his option to purchase the fourth parcel and in accordance with the terms of a mortgage agreement he had reached with the Bank of Delaware, the plaintiff commissioned an engineering survey of the Brand Name Stores property. This survey, dated November 19, 1980, indicated the existence of a sewer easement in favor of Kent County. An active sewer line ran within the boundaries of the easement and under the Brand Name building's two rear stairwells, which had been constructed to provide access to the second story. The survey further revealed that the southernmost rear stairwell had been erected over an existing manhole.

Both plaintiff and defendant Ewing denied possessing any knowledge of the manhole in the Brand Name stairwell prior to the November, 1980 survey.[3] Upon learn-

---

1. Title to the first three parcels was also to be good and marketable fee simple, free and clear of liens and encumbrances, "but subject to all existing easements and restrictions."

2. The two mortgages assumed by Palumbo bore interest rates of 9½% and 9¾%. A WSFS officer testified that its prevailing mort-

gage rate in June of 1980 was between 12 and 13%.

3. At trial, Palumbo testified that although he had made two inspections of the shopping center property prior to the discovery of the manhole, he had never been inside the southernmost rear stairwell because he had not been provided a key to its locked door. Defendant

ing of the existence of such manhole, Mrs. Ewing and her son contacted the Kent County Engineer, who advised them that they would be able to obtain a "right to trespass" from the County if they enclosed and ventilated the manhole. Such steps were taken by the Ewings, and a Right to Trespass was issued to Mrs. Ewing on January 20, 1981. The county document granted the defendant a continuing right to maintain her encroachment and to trespass on the County's easement. The trespass agreement expressly disclaimed liability on the part of Kent County, however, for any damage or loss occurring by reason of the stairwell's encroachment.

Unwilling to exercise the Option at the price agreed upon in light of the discovery of the manhole, the plaintiff filed this action with the Court on June 17, 1981. The Complaint alleged that the Brand Name building's encroachment of the county easement was a material fact of which defendant Ewing knew or should have known but failed to disclose to Palumbo, and that such encroachment rendered title to the property unmarketable. Palumbo prayed for rescission of the transaction and cancellation of the deed and other documents executed in connection with the settlement, including the collateral bonds held by co-defendant WSFS.

In her defense, Mrs. Ewing primarily argues that the encroachment was not a material defect in title which she had a duty to disclose or which would warrant rescission of the transaction. In any event, the defendant contends, the Option is separate and divisible from the Agreement of Sale, and the relief to which the plaintiff is entitled is limited to damages arising out of the allegedly unmarketable title to the Brand Name property, without reference to the other three parcels.

Defendant WSFS claims that since the property involved in the encroachment bears no relation to the collateral bonds and mortgages it holds in connection with Parcels 2 and 3, the action brought against it is frivolous. Accordingly, WSFS has counterclaimed against Palumbo for attorneys' fees and costs.

A bench trial was held on February 8, 1982 to determine whether the plaintiff is entitled to relief. The parties have not yet fully addressed the damages question, pending the resolution of the issues discussed herein. This Opinion constitutes the Court's Findings of Fact and Conclusions of Law, as required by Fed.R.Civ.P. 52(a).

## III.  INDIVISIBILITY OF CONTRACT

■ Under Delaware law, whether a contract is to be construed as divisible or entire depends upon the intention of the parties, as ascertained by reference to the text and subject matter of the contract and from any other facts and circumstances shown by the evidence. *Equitable Trust Co. v. Delaware Trust Co.*, 54 A.2d 733, 738 (Del.Ch. 1947); *Orenstein v. Kahn*, 119 A. 444, 445 (Del.Supr.1922). In the present case, the dispositive inquiry as to the severability of the Option from the rest of the Agreement is whether the parties would have struck their deal as to Parcels 1, 2 and 3 independent of their accord as to the fourth parcel, the Brand Name property.

■ Upon consideration of all the evidence adduced at trial, the Court finds that the Agreement and Option of March 28, 1980 constitute one entire and indivisible contract. Textually, the Option is phrased as a condition upon which the Agreement is contingent. While the Agreement is not a model of clarity, it is nonetheless apparent from its express terms that the sale and conveyance of parcels 1, 2 and 3 were sub-

---

Ewing stated that she had not taken an active interest in the actual construction of the Brand Name Building and hence had not learned of the existence of the manhole until after the plaintiff's survey had been completed. Both parties' testimony was corroborated in pertinent part by Philip Hall, their real estate broker. Moreover, Peter Brockstedt, who oversaw

the construction of their Garrisons Lake projects for Mrs. Ewing and her late husband Charles, testified that while he had apprised Mr. Ewing and Kent County authorities of the existence of the manhole, he seriously doubted that Mrs. Ewing ever possessed such knowledge.

stantially intertwined with the option to purchase the fourth parcel. Moreover, the parcels which were the subject matter of the Agreement and Option are contiguous and, taken together, comprise one functional unit, the Garrisons Lake Shopping Center.

The most direct evidence of the parties' intent as to divisibility was provided by the uncontradicted testimony of Palumbo and Hall, the buyer and broker, respectively, in the transaction at issue. Both men testified unequivocally that the plaintiff was not interested in any part of the transaction unless he could obtain the Brand Name property. Palumbo stated on direct examination that he did not purchase parcel 4 outright only because defendant Ewing had to resolve a problem with her bank before the property would be available for conveyance.[4] The plaintiff's particular interest in the Brand Name Stores building derived from the long-term profitability of the retail outlet and the potential profitability of the uncompleted luxury apartments on the second story, as contrasted with the lackluster performance of the rest of the shopping center.[5] Palumbo's position as to the Brand Name property was communicated to defendant Ewing by Hall, who testified that Mrs. Ewing had reluctantly accepted the plaintiff's terms in order to facilitate agreement on the other parcels.

In support of her argument that the Agreement and Option constitute separate and divisible contracts, defendant Ewing cites a number of factors relating to the transaction, emphasizing "the separate existence in both agreements of substantial consideration, dual signatures, unrelated financing arrangements and the continuing option in plaintiff to not go forward at his sole election on the Brand Name property."[6] In resolving the divisibility question, however, these factors are significant only insofar as they shed light on the parties' intent. In view of Palumbo's clearly expressed intention to purchase all or none of the property at issue, and Mrs. Ewing's assent to his terms, the factors enumerated by the defendant do not persuade the Court that the Agreement and Option constitute anything other than an entire and indivisible contract.

## IV. MUTUAL MISTAKE OF MATERIAL FACT

■ The Court finds the presence of the easement, sewer line and manhole on the Brand Name property to be contrary to the express provision in the Option that title to the parcel was to be free of encumbrances. There is no evidence from which to infer that Mrs. Ewing made any knowing misrepresentation as to such easement, and the Court finds that this is a case of mutual mistake between buyer and seller.

■ Defendant Ewing argues that since she made no misrepresentation to Palumbo, the burden of discovering the easement and sewer line should be deemed to fall equally on the parties; that the plaintiff was in as

---

**4.** Plaintiff's vague but uncontradicted testimony as to this point was that Mrs. Ewing's equity in the Brand Name property was held by her bank as collateral for an obligation unrelated to the transaction at issue.

**5.** Mrs. Ewing testified that the shopping center had been beset by financial problems between 1975 and 1980, due to the loss of certain tenants. These problems impelled her to sell the property. The plaintiff calculated that the shopping center as a whole was incurring losses of $1700 per month at the time he decided to buy it.

**6.** Defendant Ewing's Opening Post-Trial Brief, at 4. Set forth in greater detail, the defendant states:

These additional factors, all of which point to divisibility of contract, are (1) separate and distinct (although contiguous) parcels of land with separate tenants, (2) separate consideration, (3) separate down payments, (4) an eighteen month option period, (5) two sets of signatures indicating two separate assents rather than one, (6) separate mortgage lenders, (7) the operative fact that because of the nature of an option interest in real estate (*Equitable Trust, supra*) that the Seller was bound to sell but the Buyer was not bound to buy for the entire option period, and (8) the clear meaning of the contract language which simply made the granting of an option on the Brand Name parcel a condition of the contract to sell and buy the first three parcels which were settled on June 25, 1980. *Id.* at 23–24 (footnote omitted).

good a position as she was to make such discovery. The Court rejects this argument. The caveat emptor doctrine does not apply on the facts of this case, in which reasonable inspections of the property at issue by the plaintiff buyer did not uncover the existence of the sewer line. Palumbo at no time had access to the stairwell containing the manhole. Moreover, defendant Ewing, by virtue of her long-term ownership of the property and the knowledge possessed by her late husband and her chief developer, Mr. Brockstedt, as to the location of the sewer and manhole, was in a substantially better position than the plaintiff to learn of the encumbrance. In this context, the burden of discovery and disclosure properly rests with the defendant seller. As in *Dugan v. Bosco*, 108 A.2d 586 (Del.Ch.1954), a case involving a mutually mistaken exclusion from the conveyed property of a septic system, the burden rests on the party more likely to know the relevant facts. As Chancellor Seitz stated in *Dugan*, "It is not reasonable to impose on a potential purchaser—as against this seller in these circumstances—the duty to ask concerning the location of the septic system or to dig up the ground to find out." 108 A.2d at 588.

Mrs. Ewing further argues in her defense that the encumbrance involved in the present case does not constitute a material fact as to which a mutual mistake has been made or which would make title to the property unmarketable. Rather, the defendant contends, the encumbrance is a "technical title matter easily and presently corrected"[7] by the Kent County Right to Trespass. In light of the evidence adduced at trial as to the potentially adverse health, safety and aesthetic ramifications of the location of the sewer line and manhole,[8] the Court finds that the encumbrance does constitute a material fact as to which the parties were mutually mistaken.

The parties' mistake is not sufficiently corrected by the trespass agreement or by

the availability of title insurance to the owner of the property at issue. Defendant Ewing's experts testified that the Right to Trespass rendered the Brand Name property insurable and that title insurance would cover the marketability of the record title to the parcel. It was also established, however, that title insurance would not protect an insured from damage or loss incurred in an accident caused by leaking fumes, from a decline in the property's value, or from the county's entry onto the land for maintenance of the sewer line. Nor is protection against these contingencies afforded the owner of the property by the Right to Trespass. In such circumstances, the defendant's efforts to cure the defective title to the Brand Name parcel must be deemed to have fallen short.

Due to the Court's finding of a mutual mistake as to a material fact, it is unnecessary to resolve the question of the marketability of the title to the Brand Name parcel, as to which the parties' experts fundamentally disagreed. By the express terms of the Option, title to the property was to be "free and clear of all liens and encumbrances" as well as "marketable," and the defect in the former regard is sufficient to entitle the plaintiff to relief.

## V. SCOPE OF RELIEF

█ The Court finds that the plaintiff would not have entered into any part of the transaction at issue unless he could ultimately obtain the Brand Name parcel, and that he would not have sought to buy the Brand Name parcel under the terms of the Agreement if he had been aware of the existence of the encumbrance on the property. The parties' mistake goes to the heart of the transaction at issue because, as Judge Steel succinctly stated in granting rescission in a closely analogous sewer easement case, "The plain fact is that the contract would not have been entered into but

---

**7.** Defendant Ewing's Opening Post-Trial Brief, at 30.

**8.** The plaintiff and a real estate expert appearing on his behalf testified as to the anomaly of

a manhole in the entryway to what were to be luxury apartments. Palumbo also testified regarding his concern over the danger of toxic or explosive gases emanating from the manhole.

for the mutual mistake." *Ger v. Kammann,* 504 F.Supp. 446, 448 (D.Del.1981). In such circumstances, the plaintiff is entitled to the rescission of the entire transaction and the return of the parties to *status quo ante.* Restatement 2d of Contracts § 152 (1981); 13 Williston on Contracts § 1544 (3d ed. 1970).

As to the contract between Palumbo and defendant Ewing, the precise means by which the plaintiff's remedy is to be effectuated will not be established by the Court until further argument is heard or, if necessary, trial is held on this matter.

Defendant WSFS argues that regardless of the disposition of Palumbo's action against Mrs. Ewing, the collateral bonds executed to WSFS by the plaintiff should remain in the bank's hands. This is so, WSFS contends, because: (1) such bonds represent a contract separate and distinct from the Agreement and Option, and unconnected with the Brand Name property; and (2) because WSFS's decision to permit Palumbo to assume Mrs. Ewing's mortgage rather than to accelerate the latter's payments upon her default was based on the bank's reliance on Palumbo's bonds, which reliance is stated by WSFS to estop Palumbo from seeking cancellation of the bonds.

■ Defendant WSFS's arguments must be rejected, however, so that the demands of equity can be met in affording the plaintiff relief. While there is no allegation or evidence of mistake or wrongdoing on the part of the bank, it was properly joined as a party by Palumbo in his action for rescission. The collateral bonds executed by Palumbo were integrally related to the assumed mortgages, the indivisible Agreement and Option, and the transaction as a whole. To permit the plaintiff rescission as to defendant Ewing but to decline to order the cancellation of the collateral bonds would place him in the untenable position of guarantor of Mrs. Ewing's mortgage payments to defendant WSFS. Such a result would deny Palumbo adequate relief.

The Court, in the exercise of its equitable powers in a rescission case, must seek to return all parties as closely to the *status quo ante* as circumstances permit. "Once a court of equity takes jurisdiction of a case, it will attempt to do complete justice. In ordering rescission of a contract, it will order done whatever is necessary to restore the parties to their original situation as nearly as possible." *Dick v. Reves,* 206 A.2d 671, 676 (Del.Supr.1965). In the present case, the only damage WSFS will suffer in connection with the cancellation of Palumbo's collateral bonds is the loss of revenues the bank might have derived through refinancing the property at market rates. Such loss is due to WSFS's business decision to permit the assumption of Mrs. Ewing's mortgages by the plaintiff and does not work such an injustice as to defeat Palumbo's right to rescission and cancellation. The Court finds that the plaintiff is entitled to the cancellation of the collateral bonds executed by him to WSFS, and defendant WSFS's counterclaim for attorneys' fees and costs is accordingly denied.

An Order will be entered in accordance with this Opinion.