**In the Matter of James B. THOMAS et al., a partnership.**

Court of Chancery of Delaware, New Castle.

Aug. 9, 1972.

---

Ralph F. Keil, of Keil & Keil, Wilmington for petitioners James B. Thomas and David S. Keil, trustees under the last will and testament of Emid A. Thomas.

Courtney H. Cummings, Jr., of Killoran & VanBrunt, Wilmington, for petitioner Joan M. Reese.

Richard J. Baker, Wilmington, for the members of J.C.S. Partnership.

MARVEL, Vice Chancellor:

On March 23, 1966, the late Emid A. Thomas executed his last will and testament in which he named his son James B. Thomas as a co-trustee of a testamentary trust the corpus of which was to consist of his residuary estate. Thereafter, on April 29, 1967, the testator entered into a written agreement with J.C.S. Corporation under the terms of which he leased to such corporation a certain parcel of land owned by him located at 1002 Concord Avenue, Wilmington, which lands are now held in the aforesaid trust. Such lease does not refer to the fact that Emid A. Thomas had named his son James B. Thomas as co-executor of his estate as well as co-trustee in his last will and testament executed by him the year before.

James B. Thomas at the time in question was and still is the holder of a one-third interest in the capital stock of the J.C.S. Corporation. Furthermore, such son appears to have looked after his father's interest in such lease until his father's death. The terms of the above agreement provided for a term of thirteen years, running from May 1, 1967 to April 30, 1980, with a fixed basic rental of $5,000 per year, payable in monthly installments of $416.67 each, with an option granted to the lessee to purchase the land in question for the sum of $100,000. Such option was to be exercisable at any time during the term of the lease upon a deposit of $5,000 provided that the lessee was not at such time in default under the contract. Additional rental in the form of payment of school and other local taxes was also provided for in the lease.

On October 25, 1968, Emid A. Thomas died, and on June 6, 1970 the J.C.S. Corporation, with the consent of the trustees, whose recognition of the validity of such lease is sought to be enjoined under the amended petition of Joan M. Reese, a trust beneficiary (whose original petition filed on May 11, 1971 initiated the present proceedings) assigned the above referred to lease to the J.C.S. Partnership, an entity made up of the stockholders of the J.C.S. Corporation. While he originally held a 50% interest in such partnership, since April 18, 1969 James B. Thomas has held only a one-third interest therein.

On May 13, 1971, the Thomas trustees filed their petition for instructions in this proceeding in which approval was sought from this Court of proposed amendments of the lease in question, which, if approved, would provide that the right to purchase the Thomas trust property could be exercised by the posting of a $100,000 bond by the partnership, a form of obligation to be

executed by the individual partners and their wives apparently in lieu of the payment of cash in the stipulated amount of $100,000 as provided for in the original lease. The trustees further asked that approval be given to certain proposed changes in the insurance requirements of the original lease and that the partnership be authorized to raze the remaining buildings situate on the premises. While members of the partnership and the other trust beneficiaries as well as Mr. Thomas as trustee have given their consent to such proposed lease amendments, neither the petitioner Joan M. Reese nor the co-trustee, David S. Keil, have consented to such proposed amendments.

The partnership here involved was evidently organized for the purpose of first attempting to assemble and thereafter to make a profit on the development or sale of a combined tract of land consisting of four contiguous parcels situate in the area here involved, one of the parcels to be included in this so-called package being the Concord Avenue lands held in the Thomas trust. The assignment of the lease here in issue by the J.C.S. Corporation to the J.C.S. Partnership was accomplished without Court approval in order to gain a tax advantage in connection with such proposed transaction and make such project more attractive to its partner participants. The corporation in the first instance and later the partnership after the assignment have paid the basic rent provided for under the terms of the lease, such rent having been the sole income generated in such trust. Furthermore, the property in question has deteriorated badly and no attempt has been made by the trustees to enforce the covenants imposed on the lessee which required it to maintain the buildings situate on the tract in good order and repair. And while it is not clear from the record as to when the property in question became entirely untenanted, it is apparent that the partners, following the loss of the Delaware State Highway Department as a tenant, thereafter decided on a passive course of action,

merely paying to the trustees the basic rental of $5,000 which appears to have been contributed by the individual partners.

One of the remaindermen of the trust, Mrs. Joan M. Reese, a sister of James B. Thomas, has, as noted above, petitioned the Court for relief against the complained of actions of the trustees, including the granting of an order requiring the trustees to decline to recognize the lease as a binding agreement. Mrs. Reese's original petition also sought to force the resignation of the named trustees and the naming of successor trustees, however, her amended petition has dropped such application and merely seeks an order to enjoin the trustees and members of the partnership from recognizing the validity of the lease, and alternatively, if the property in question is sold, that the partnership pay to the trust the fair market value of such tract of land.

Mrs. Reese has stated her claimed right to relief in a petition (which in its amended form adds the partnership as a defendant) on two grounds, first that the fiduciary duty of James B. Thomas as a trustee is at odds with his interest as a partner of the J.C.S. Partnership and/or shareholder of the J.C.S. Corporation, and secondly, that, in any event, the trustees have been derelict in their duties as such in that they have not sought to enforce the lease agreement, including its covenants, against the partnership, and have furthermore improperly permitted the assignment of the lease and acquiesced in its amendments. Mrs. Reese's principal grievance would appear to be, however, that the partners, including Mr. Thomas, if not enjoined, propose, upon consummation of their proposed real estate project, personally to profit to the injury of the Thomas trust by receiving substantially more for the parcel here in issue than the stipulated $100,000 purchase option price which additional proceeds will thus be denied to the trust.

To begin with, I am satisfied that there is an unreconcilable conflict between the actions required of James B. Thomas in

the carrying out of his fiduciary duties as trustee as opposed to the pursuit of his personal interests in profiting as a land developer. And while the matter of alleged past failures of the trustees to maintain the buildings on the tract in issue may be subject to factual dispute on the present record, viewed in the light of the ultimate interests of the cestuis que trust, it is clear that James B. Thomas has, since the inception of the trust here in issue, acted in regard to the trust property in question as if his duties towards the trust were limited by the option price in the lease agreement and on the supposition that any profit which might be gained over the above option price upon the disposal of such lands should enure to the partners' benefit and not to that of the trust beneficiaries.

The general law concerning trusts is to the effect that a trustee is barred from purchasing property held in the trust which he administers, Wilmington Trust Company v. Carrow, 14 Del.Ch. 290, 125 A. 350. And in point of fact the trustees and partners concede that a trustee may not deal with himself in regard to trust property held by him as such, Eberhardt v. Christiana Window Glass Co., 9 Del.Ch. 284, 81 A. 774, and Downs v. Rickards, 4 Del.Ch. 416. Compare Cahall v. Lofland, 12 Del.Ch. 299, 114 A. 224 and Guth v. Loft, Inc., 23 Del.Ch. 255, 5 A.2d 503. The trustees and partners contend, however, that the decedent Emid A. Thomas, having during his lifetime entered into the lease in question with knowledge of its option provision, intended that his son James B. Thomas was not to be bound by the general law which would otherwise have barred him in his capacity as testamentary trustee from dealing with trust property with his own interests in mind rather than the welfare of the trust beneficiaries. And this is the case when the terms of a testamentary trust so provide, In re Wallace's Estate, 299 Pa. 333, 149 A. 473. See also Appeal of Burke, 378 Pa. 616, 108 A.2d 58, and Vol. II Scott on

Trusts § 1709. Furthermore, when a trustee deals with trust property for his own benefit, the ultimate legality or illegality of such a transaction depends on the circumstances surrounding such act, one suggested method of proceeding being to seek the approval of the Court of Chancery, Equitable Trust Co. v. Gallagher, 34 Del.Ch. 249, 102 A.2d 538. I am satisfied here that the Thomas will, which contains the usual broad powers normally granted a trustee authorized to carry on a decedent's business and the like, including the selling of trust property, evidences no clear testamentary intent that the son was to be authorized to deal with himself to his own advantage in the handling of the trust property and that the approval sought by the trustees, would, if granted, be injurious to the trust.

The trustees and partners rely heavily on the case of In re Mulholland's Will Trust, 1 All England Reports 460, in which a lease to a bank (which contained an option to the lessee to purchase the leased property) had been executed prior to the execution of the lessor's last will and testament. In such will the lessee bank was named executor and trustee for the lessor's estate. The lessor having exercised its option to purchase the leased property after the testator's death, the court first noted that the contractual right to exercise the option to purchase the property in question having been created before a fiduciary relationship arose between the decedent and the bank that the option in question had been validly exercised. As a result the contentions of the beneficiaries under the decedent's will to the effect that the conveyance to the optionee-trustee bank should be set aside on the ground that the duty of the bank-trustee conflicted with its own interests and that having accepted a fiduciary position, such bank was precluded from exercising the earlier option to purchase the lease land, were denied.

In the cited case, the lease which contained the option to the Westminister

Bank Ltd., lessee, to purchase the demised premises was entered into on September 1, 1936, and it was not until July 26, 1937 that the testator executed his last will and testament in which he named the aforesaid bank to be a co-executor and co-trustee of his estate. In the case at bar, however, the last will and testament of Emid A. Thomas, in which his son James was named trustee, was executed on March 23, 1966 prior to the making of the lease here in issue which took place on April 29, 1967. I deem it significant that the testator with knowledge of the lease in question failed to make a codicil to his will giving his son-trustee the power to profit personally which the latter here seeks from the Court. The cited English case can be further distinguished from the relevant American cases banning self-dealing by trustees on the basis of an English statute which in effect created an equitable title in the optionee bank involved in such case. But the fact remains that the decedent in the English case, with knowledge of the existing lease, proceeded to name the lessee bank trustee without reservation, while the opposite occurred in the case at bar. In short, having failed in his will to authorize his trustee-son to deal personally with the trust property, the testator then executed the lease in issue in the light of the provisions of his will which he did not thereafter change. Finally, the son's deposition testimony as to conversations with his father in which personal profit on the part of the son as trustee was allegedly approved was not included in the decedent's will, 12 Del.C. § 102.

In my opinion, the trustee, James B. Thomas, has not on the present record established his claimed right to profit personally on the sale of the trust property here involved in that the terms of the trust do not authorize him so to do and the proposed transaction could confer no conceivable benefit on the trust. Accordingly, neither such trustee, his fellow stockholders in J.C.S. Corporation, nor his partners in the J.C.S. Partnership may be permitted to profit from the sale of the property in question. Any amount over the option price of $100,000 realized from the resale of the property in question by Thomas or any of his above associates will be ordered remitted to the trust. If the property is resold as part of a so-called package, as planned, then a percentage of the profits of the entire sale proportionate to the part of the package which the parcel in question represents must be remitted to the trust.

On the other hand, the buildings on the leased property having been substantially razed notwithstanding the lease provisions to the contrary, there would appear to be no good reason why the remaining buildings or parts thereof on the leased premises should not be completely razed provided rental is paid as stipulated or to require the continuation of fire or other casualty insurance provided such insurance is converted to reasonable liability insurance. I also see no objection to the posting of a bond by the lessee's assignee as additional security, it being understood that the exercise of the option requires the payment of cash.

There being no factual disputes of record in evidence which are material and admissible in this proceeding, summary judgment will be granted to the petitioner Joan M. Reese to the extent outlined above. For the reasons above stated summary judgment to the limited extent above indicated will also be granted to the trustees and the J.C.S. Partnership on the former's petition for instructions.

Order on notice.