**In the Matter of James B. THOMAS et al.**

Supreme Court of Delaware.

May 16, 1973.

Rehearing Denied July 6, 1973.

Aubrey B. Lank and Christopher S. Flanagan, of Theisen, Lank & Mulford, Wilmington, for respondents below, appellants.

Courtney H. Cummings, Jr., Wilmington, for petitioner, below, appellee.

Before WOLCOTT, C. J., CAREY, J., and WALSH, Judge, sitting.

WALSH, Judge.

This is an appeal from a Court of Chancery determination of self-dealing on the

part of a trustee-remainderman with consequent limitation on the benefits to be realized by reason of such conflict.

The facts which underlie the controversy are not in serious dispute, although the parties contest the conclusions which may be drawn from them. On March 23, 1966, Emid A. Thomas ("trustor") executed a will which included a testamentary trust with his wife as the income beneficiary and his four children as remaindermen. One of the remaindermen, James B. Thomas, ("James") was also named as co-trustee. The other trustee was an attorney. The corpus of the trust consisted of certain income-producing real estate located at the intersection of Concord Avenue and Broom Street adjacent to Interstate Route I–95 in Wilmington.

On April 29, 1967, trustor executed a written lease of the Concord Avenue property with J.C.S. Company, a Delaware corporation of which James was a one-third owner. The term of the lease was thirteen years at a fixed annual rental of $5,000 payable in monthly installments. The lease also extended to the lessee an option to purchase the property for the fixed sum of $100,000, exercisable at any time during the lease upon payment of a deposit of $5,000, provided lessee was not then in default. In effect, J.C.S. became a prime tenant of the property since it in turn leased portions of the property to various sub-tenants.

Trustor died in 1968. James assumed his role as a co-trustee and in June, 1970, both trustees consented to an assignment of the lease from the corporate lessee to a partnership, composed of the former stockholders of J.C.S. Company including James. This assignment was made primarily for the tax benefit of the partnership. Beginning in 1968, the partnership had taken steps to acquire property adjacent to the corpus property with the result that by 1971 the partnership had assembled a parcel of 76,747 square feet including the corpus property of 30,780 square feet. The

total property had been appraised at $345,000 and offered for sale at $500,000 with no takers. The corpus property had been appraised at trustor's death, for estate tax purposes, at $100,000.

In 1971, the trustees tentatively agreed with the partnership that, because of the deterioration of the buildings, the lease should be amended to permit demolition and the exercise of the purchase option by execution of a bond signed by the partners and their wives. Approval of these changes were sought through a petition for instructions in the Court of Chancery. One of the remaindermen of the trust, Joan M. Reese, objected and in pursuit of her objections sought initially to remove the trustees but ultimately requested that the lease option be declared inoperative, or, alternatively, that the partnership account to the trust for the fair market value of the land in the event the option was exercised.

Mrs. Reese's principal argument below was that James was in a position of obvious conflict as co-trustee and partner in the J.C.S. partnership. As such he should not be permitted to profit from the exercise of the option which was contemplated by the lease. If, she contended, the ultimate sale of the corpus property as part of the larger parcel results in a return of more than $100,000, James would have benefited himself, *pro tanto*, to the detriment of the trust. The partnership argued below and in this Court that the trust cannot suffer since the option price is fixed and there can be no detriment by reason of the exercise of the option even though James acts in a dual capacity.

On cross motions for summary judgment, the Vice Chancellor determined that there was "an unreconcilable conflict" between James' duty as trustee and his actions as a partner-lessee. Since under the terms of trustor's will there was no express authority granted to James to deal on his own behalf with trust property the prohibition was absolute. Accordingly, the Vice Chancellor, 295 A.2d 757, ruled that

any amount realized on a resale by James or any of his associates in excess of the $100,000 option price should be remitted to the trust. The Vice Chancellor did agree to permit the remaining buildings on the property to be demolished provided the rental continued as required under the lease partnership. He also required the option payment to be made in cash.

The Vice Chancellor did not find, nor did the petitioner below assert, fraud or bad faith in the action of James or other members of the partnership. The decision below was premised on the absolute prohibition against a trustee dealing with trust property for his own benefit. Initially, we agree with the Vice Chancellor that the rule announced in Wilmington Trust Co. v. Carrow, 14 Del.Ch. 290, 125 A. 350 (1924) prohibiting a trustee from dealing with trust property for his own benefit and to the detriment of the trust property is a salutary one. As the Court noted in *Carrow,* a Court of Equity in the exercise of its supervisory jurisdiction over trusts may decree the cancellation of the lease and thus free the corpus from the burden unwisely placed upon it by the trustee whenever the Court is persuaded that the lease was an abuse of the trustee's authority. In *Carrow,* however, the Court struck down a lease which had been made by the trustee, himself, with his wife as the lessee, not only for self-dealing but because the lease was unreasonable on its face.

■ While we recognize the rule we question its application to this situation. It is, of course, true that James occupied a dual status, but his discretion was limited by the fixed terms of this lease. The term "dealing" includes the concept of exercising discretionary acts in such a way as to refrain from one alternative in favor of a different alternative. In this case, the lease was in effect prior to the operation of the trust and the lessee could have acquired the property at any time before trustor's death simply by paying the fixed option price. The value of the option provision to the lessor remains unchanged from the

date of the lease to the date of ultimate exercise during the life of the lease. Trustor's death should not, *ipso facto,* render the lease any more valuable than what it was deemed to be in the bargain made by the trustor prior to his death. Yet this result necessarily follows if the absolute prohibition is applied. We do not believe that there is self-dealing in the sense used by *Carrow.* As noted, in *Carrow* the trustee actually negotiated the lease and was a party to drawing up the terms which were found unreasonable on their face. In the present case James fell heir not only to his role as trustee but also to his position as a lessee in a contractual relationship with the trust. He did not, indeed he could not, change the terms of the lease to his benefit either in one capacity or the other.

This Court has held that an undertaking by a trustee to deal in trust property is not *per se* illegal but that such a determination must depend upon the attendant circumstances. Equitable Trust Co. v. Gallagher, Del.Supr., 34 Del.Ch. 249, 102 A.2d 538 (1954). The facts here under scrutiny are comparable to the situation in Bloodworth v. Bloodworth, 224 Ga. 717, 164 S.E.2d 823 (1968) where by the terms of a partnership agreement, the representative of a deceased partner was obligated to sell the interest of the deceased partner for a stipulated sum. One partner died naming the surviving partners as executors. The Court held that the executors could properly sell the interest to themselves since there was "no room for bargaining".

■ That the potential for conflict exists in James' discharge of his duties as trustee is undoubted, and the power of a Court of Equity to prevent such abuse is not questioned. But duality of positions does not, standing alone, require a finding of conflict with consequent detriment to the trust. Here, James exercised no right as a partner he did not possess before he became a trustee nor did the trust property incur any disability by reason of his being a trustee which did not exist prior to the death of the trustor. The option to pur-

chase was fixed in amount, duration and manner of exercise before the property passed into trust. No change in those terms was made by the trustee, nor could be made without the approval of the Court. Thus there can be no detriment to the trust even if there be a benefit to the partnership, including James. The benefit to the partnership springs from factors extrinsic to James' duties as a trustee. We do not equate those duties with the term "dealings" as that concept is applied in *Carrow*.

The result of the decision of the Vice Chancellor is to confer an unanticipated benefit on the trust while imposing a hardship on the partnership in denying what it bargained for in good faith, on the sole ground that the trustor designated a trustee with whom he was already in a lessor-lessee relationship. Such a result carries the rule against self-dealing to an unnecessary extreme.

██ While there was an initial objection to demolition of the leased buildings, the Vice Chancellor determined that course a prudent one and we agree. The partnership and trustees also appeal from the taxing of the costs of the proceeding to the Estate. While it is true that our decision, in effect, removes the benefit resulting the decision of the Court below, nonetheless, the proceeding below did result in a determination of the trustee's authority to sell the corpus property. In the final analysis the allowance of costs is a matter of discretion. We find no abuse of that discretion.

The decision of the Court of Chancery is reversed to the extent that it prohibits the partnership from exercising the option to purchase on the terms set forth in the lease. In all other respects the decision is affirmed.

## UPON PETITION FOR REARGUMENT

Appellee seeks reargument on several grounds, all of which we find without merit. One point raised by Appellee, however, deserves comment. She argues that the option to purchase does not obligate the partnership to take title within the option period—that it can simply "walk away" from the transaction after having demolished the building. Such an event is difficult to envision in view of the partnership's assemblage of a parcel for resale, of which the trust property is an integral part, and its vigorous efforts to preserve the option. In any event, we consider the partnership's action in razing the building a clear and unmistakable election to consummate the option, in default of which an action for specific performance would lie.

We adhere to our original conclusion and deny the petition for reargument.