ADVANCE CONCRETE FORM, INC., a domestic
corporation, Plaintiff-Appellant,

v.

ACCUFORM, INC., a domestic corporation, and James
White, Defendants-Respondents.

Court of Appeals

*No. 89-0683. Submitted on briefs December 8, 1989.—Decided
September 27, 1990.*

(Also reported in 462 N.W.2d 271.)

335

For the plaintiff-appellant the cause was submitted on the briefs of *Rhea A. Myers* of *Stroud, Stroud, Willink, Thompson & Howard* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Patience D. Roggensack* and *Bradley W. Hauck* of *Ross & Stevens, S.C.* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.   Advance Concrete Form, Inc., a minority shareholder in Accuform, Inc., appeals from a judgment dismissing its complaint to enforce its rights under sec. 180.43, Stats. Advance contends that Accuform's year-end financial statements provided to Advance were not in reasonable detail as required by sec. 180.43(1). It also claims that there is no credible evidence supporting the circuit court's finding that Advance did not have a proper purpose under sec. 180.43(2) to examine and extract from Accuform's books and records. Finally, Advance argues that dismissing its complaint was too drastic and that the circuit court should have considered alternatives which would protect Accuform from Advance's possible improper use of information obtained from examination of Accuform's books and records.

We hold that the circuit court correctly concluded that Accuform's annual financial statements were in reasonable detail and satisfied the requirements of sec. 180.43(1), Stats., and that Advance did not have a proper purpose under sec. 180.43(2) to examine and extract from Accuform's books and records. We reject Advance's argument that the circuit court should have considered less drastic alternatives to dismissing Advance's complaint. We therefore affirm.

## BACKGROUND

Advance and Accuform are competitors in manufacturing and selling concrete forms used in the construction of building foundations. Advance hired away an Accuform employee and purchased his ten percent of Accuform's stock.

As a shareholder, Advance made written demands of Accuform under sec. 180.43(2), Stats., to examine and extract from Accuform's books and records. Advance's written demands stated that it wished to examine the books and records to value its investment in Accuform's stock and to evaluate the company's previous year's performance.

Accuform's annual financial statements were "compiled" statements. Advance's expert witness testified that it is customary for a small business to use compiled annual financial statements, rather than incur the expense of having an accountant prepare a reviewed or audited statement. The circuit court found that these compiled financial statements were prepared in reasonable detail and satisfied the requirement of sec. 180.43(1), Stats.

The circuit court also found that while Advance stated a proper purpose for its inspection demands,

Advance's true purpose was to obtain information to gain a competitive advantage over Accuform. The circuit court concluded that Advance's true purpose was not a proper purpose for its demand, as required by sec. 180.43(2), Stats.

## I.

## THE ANNUAL FINANCIAL STATEMENTS

Section 180.43(1), Stats., provides in part that each corporation shall cause a true statement "in reasonable detail" of its assets and liabilities and the results of its operations as of the close of each fiscal year to be made and filed at its registered office, and "shall mail a copy of the latest such statement to any shareholder . . . upon his written request therefor."[1] The facts are undisputed as to how Accuform met this requirement. Therefore, whether Accuform complied with sec. 180.43(1) is a

---

[1]Section 180.43(1), Stats., provides in full:

Each corporation shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its shareholders and board of directors; shall keep at its registered office or principal place of business, or at the offices of its transfer agents or registrars, a record of its shareholders, giving the names and addresses of all shareholders and the number and class of the shares held by each; and shall cause a true statement of its assets and liabilities as of the close of each fiscal year and of the results of its operations and of changes in surplus for such fiscal year, all in reasonable detail, to be made and filed at its registered office within 4 months after the end of such fiscal year or such longer period as may be reasonably necessary for the preparation thereof, and thereat kept available for a period of at least 10 years for inspection on request by any shareholder, and shall mail a copy of the latest such statement to any shareholder or holder of voting trust certificates for shares of the corporation upon his written request therefor. Any books, records and minutes may be in written form or in any other form capable of being converted into written form within a reasonable time.

question of law which we decide independently of the circuit court's determination. See *Kallas Millwork Corp. v. Square D Co.,* 66 Wis. 2d 382, 386, 225 N.W.2d 454, 456, (1975) (whether undisputed facts fit legislatively prescribed condition is a question of law). We have specifically applied this rule of construction to sec. 180.43. *See Bitters v. Milcut Inc.,* 117 Wis. 2d 48, 49, 343 N.W.2d 418, 419 (Ct. App. 1983).

In compliance with sec. 180.43(1), Stats., Accuform's accountants prepared annual balance sheets showing Accuform's current and fixed assets, its current liabilities, long-term debt, and stockholders' equity. They also prepared a statement of Accuform's operations and retained earnings for the fiscal year. These were submitted to Accuform's board of directors by the accountants in the form of the Accountant's Compilation Report.[2]

Advance points to the following disclaimer in each accountant's report as an admission that the balance sheets were insufficient under generally accepted accounting principles:

> Management has elected to omit substantially all of the [disclosures] and the statements of income, retained earnings and changes in financial position required by generally accepted accounting principles. If the omitted disclosures were included in the financial statements, they might influence the user's conclusions about the company's financial position, results of operations and changes in financial position. Accordingly, these statements are not designed for those who are not informed about such matters.

---

[2] To prepare a compilation report, the accountant takes the information provided by the client, presents it under general accounting principles, but assumes no responsibility for its accuracy or completeness.

Accuform's expert witness testified that the disclaimer was a "common and . . . a standard letter." The witness agreed to counsel's characterization of the disclaimer as "canned" language used by accountants when they have not audited the company's books.

Accuform does not dispute Advance's assertion that Accuform's annual financial statements were not in sufficient detail to allow Advance to establish a market value for its Accuform stock. It argues, however, that sec. 180.43(1), Stats., does not require that the annual financial statements be in such detail. We agree. It is not the purpose of the annual filing and notification requirement of sec. 180.43(1), Stats., to provide shareholders with detailed information as to the corporation's financial operations and condition. Section 180.43(2) provides the means by which the shareholder may obtain that information, through examination of the corporation's books and records.

Section 180.43, Stats., is comparable to sec. 52 of the Model Business Corporation Act. 2 Model Business Corp. Act Ann. sec. 52, para. 3.02 at 130 (2d ed. 1971). Model Act's analogue to sec. 180.43(1) reads in part as follows:

> Upon the written request of any shareholder . . . the corporation shall mail to such shareholder . . . its most recent financial statements showing in reasonable detail its assets and liabilities and the results of its operations.

*Id.* at 155.

The comment to this paragraph states:

> Statutes which require direct reports to shareholders on the business and financial affairs of a corporation are usually intended to supplement rather

341

than to replace the right to inspect the books and records. The purpose of the last paragraph of section 52 is to provide customary information *in a simple and direct manner without the expenditure of time and money by shareholder and corporation that often accompanies the cumbersome remedy of inspection . . ..*

*Id.* at 155–56 (emphasis added).

We conclude that Accuform's annual financial statements provided its shareholders with customary information in a simple and direct manner, which satisfied the "reasonable detail" requirement of sec. 180.43(1), Stats.

## II.

## ANY PROPER PURPOSE

### A.

Advance raises a threshold procedural issue. It claims that sec. 180.43(4), Stats., required Accuform to plead, as an affirmative defense, Advance's lack of good faith in making its inspection demands. We disagree.

Section 180.43(4), Stats., provides in part that, "[i]n addition to any other meritorious defense, it shall be a defense to any action for penalties under this section that the person suing therefor . . . was not acting in good faith in making his demand." The lack-of-good-faith defense must be pleaded only when the shareholder whose inspection demand has been refused seeks a penalty from the officer or agent who, or corporation which, refused to allow the shareholder to examine and make abstracts from the corporation's books and records.

Advance does not seek a penalty under sec. 180.43(4), Stats., from any officer or agent of Accuform or against Accuform itself for refusing to allow its examination and extracting from Accuform's books and records. Section 180.43(4) is therefore inapplicable.

B.

Section 180.43(2)(a), Stats., provides that "[a]ny . . . shareholder of record . . ., upon written demand stating the purpose thereof, shall have the right to examine, . . . at any reasonable time or times, for any proper purpose, [the corporation's] relevant books and records . . . and to make extracts therefrom."[3]

We have construed "any proper purpose" under this statute to include "a reasonable purpose germane to a shareholder's status as a shareholder." *Belth v. American Risk & Ins. Ass'n.*, 141 Wis. 2d 65, 70, 413 N.W.2d 654, 656 (Ct. App. 1987). The circuit court found that Advance stated a proper purpose for its inspection demand: evaluation of Advance's investment in Accuform. Accuform does not dispute this finding. The court concluded, however, that "[Advance's] stated reasons for the request for information . . . are simply not believable." Advance insists that once the circuit court found that Advance had stated a proper purpose for its demand, the court misapplied the statute when it specu-

---

[3]Section 180.43(2)(a), Stats., provides in full:

Any person who shall have been a shareholder of record for at least 6 months immediately preceding his demand or who shall be the holder of record of at least 5% of all the outstanding shares of a corporation, upon written demand stating the purpose thereof, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its relevant books and records of account, minutes and record of shareholders and to make extracts therefrom.

lated further as to Advance's motives. It argues that our inquiry should end if we determine that Advance stated a proper purpose for its inspection demand.

Taken out of context, there is language in several Delaware decisions to support Advance's position. "Once it is determined that a shareholder has a proper purpose that is primary, any secondary purpose or ulterior motive that the stockholder might have is irrelevant." *Helmsman Management Serv. v. A. & S. Consultants,* 525 A.2d 160, 164 (Del. Ch. 1987). *See also CM & M Group, Inc. v. Carroll,* 453 A.2d 788, 792 (Del. Supr. 1982).

However, the Delaware cases do not support Advance's contention that the court's inquiry ends once a proper purpose is stated. The *Helmsman* court explained that "where a stockholder who seeks inspection of corporate books and records has two purposes, one stockholder-related and the other not, the critical inquiry is whether the stockholder-related purpose predominates over the ulterior purpose." *Helmsman,* 525 A.2d at 166–67. If the ulterior purpose is the shareholder's primary purpose, the shareholder may not obtain inspection relief under a proper-purpose statute. *Id.* at 166. Thus, the Delaware cases support the general rule that "[e]ven if a seemingly proper purpose for inspection is shown, the purpose cannot, to justify enforcement of a shareholder's inspection right, be adverse to the best interests of the corporation." 18A Am. Jur. 2d *Corporations* sec. 383 at 292 (1985).

That the general rule applies to sec. 180.43(2)(a), Stats., is confirmed by its legislative history. A shareholder's right of inspection of the corporation's books and records has been statutory in Wisconsin since 1853. Ch. 58, Laws of 1853. The Wisconsin statute was substantially unchanged until 1941, when the words "for

any proper purpose" were added to sec. 182.10, Stats. (1939), by ch. 292, Laws of 1941. Prior to the amendment, the Wisconsin courts had construed the shareholder's-inspection statute to give a shareholder the absolute right to inspect and extract from the corporation's books and records. *Pick v. Wesbar Stamping Corp.,* 238 Wis. 93, 97, 298 N.W. 58, 59 (1941).

One commentator has suggested that the legislature presumably intended to use "any proper purpose" in its common-law sense. Note, *Corporations—Stockholder's Right to Inspect Books—Recent Statutory Amendment,* 1942 Wis. L. Rev. 292, 296. At common law, all shareholders of a private corporation had the right, by reason of their interest therein, to inspect and examine the corporation's books and papers at reasonable times and places and for proper purposes. 5A W. Fletcher, *Cyclopedia of Corporations* sec. 2214 at 328 (Perm. ed. 1987). *See State ex rel. Dempsey v. Werra Aluminum Foundry Co.,* 173 Wis. 651, 653, 182 N.W. 354, 355 (1921) (at common law, shareholder enjoyed right to inspect corporation's books and records for purposes not inimical to corporation's interests).

Advance's construction of sec. 180.43(2)(a), Stats., would negate the legislature's addition of "any proper purpose" to the inspection statute. It would restore to a shareholder the absolute right of inspection since any shareholder could state that the purpose of inspection was to value the shareholder's stock. We therefore reject Advance's contention that the court's inquiry ends whenever a shareholder states *any* proper purpose for the shareholder's inspection demand. We adopt the general rule which requires an inquiry into the *bona fides* of the shareholder's inspection demand.

Advance contends, however, that the bare fact that it is Accuform's competitor is not sufficient to bar its access to Accuform's books and records. *See Nationwide Corp. v. Northwestern Nat'l Life Ins. Co.,* 87 N.W.2d 671, 679 (Minn. 1958). Nor is the fact that the shareholder is on unfriendly terms with the officers of the corporation a ground for denying inspection. *State ex rel. Watkins v. Cassell,* 294 S.W.2d 647, 654 (Mo. App. 1956), *disapproved on other grounds, State ex rel. Jones v. Ralston Purina Co.,* 358 S.W.2d 772, 776 (Mo. 1962).

The circuit court found, however, that Advance's true purpose for its inspection demand was to obtain information to gain a competitive advantage over Accuform. This purpose is inimical to Accuform's interests and will not support Advance's inspection demand. *See Slay v. Polonia Publishing Co.,* 229 N.W. 434 (Mich. 1930) (mandamus denied where petitioner held but one share of stock and was employed by a business rival to obtain access to the records to be used for purpose of unfair competition); *Hutson v. Brown,* 26 So. 2d 907 (Ala. 1946) (inspection denied where purpose was to cripple and destroy competing corporation); 8 Ala. Law. 184–188 (1947) (discussing *Hutson v. Brown); Hagy v. Premier Mfg. Corp.,* 172 A.2d 283 (Pa. 1961) (improper to exclude evidence that shareholder's inspection demand was to aid competitor in which he was a shareholder); 5A W. Fletcher, *Cyclopedia of Corporations* sec. 2226.3 at 389 (general rule is that inspection will not be allowed where information is to be obtained and furnished to a competing company); 18A Am. Jur. 2d *Corporations* sec. 385 at 294 (no inspection will be granted where stockholder acts for business competitor and seeks to injure the corporation in some manner).

*State ex rel. Boldt v. St. Cloud Milk Producers' Ass'n,* 273 N.W. 603 (Minn. 1937) is closely analogous to

this case. Petitioner was a member of the respondent dairy cooperative. The cooperative refused petitioner's demand to examine its books and records. The court found that the inference was inescapable that the lawsuit was brought for the benefit of rival dairy companies. In reversing the grant of mandamus, the court said:

> The writ will not be denied merely because the petitioner is hostile to the respondent or because he is a member of a competing corporation. The writ is issued only to protect some right of the petitioner, either as a stockholder or member of the corporation as such, or some right of the corporation in which he is interested as such stockholder or member. The relief sought must be germane to his rights as a stockholder or member. If it is foreign thereto, the writ will be denied even though he otherwise might be entitled to it. Accordingly, it has been held that the writ will not be granted where it appears that the examination is desired for the purpose of obtaining information to be used in crippling the business of the corporation for the benefit of a business rival.

*Id.* at 609 (citation omitted).

If the circuit court's finding, that Advance's true purpose for its inspection demand was to gain a competitive advantage over Accuform, was an inference it could reasonably draw from the evidence, the court correctly dismissed Advance's complaint. We therefore examine the facts and circumstances of this case. "Impropriety is commonly not inherent in the avowed purpose but is rather a matter of the facts and circumstances of the particular case." 5A W. Fletcher, *Cyclopedia of Corporations* sec. 2226 at 382.

The circuit court found: (1) Advance and Accuform are direct and fierce competitors. (2) The principals of each corporation have exhibited an intense competitive-

ness and personal animosity going back many years. (3) Advance's principal stated several times that he wanted to put Accuform's principal out of business. (4) Advance is a much larger corporation than Accuform and was able to woo away Accuform's only full-time sales person and thus acquired its stock in Accuform. (5) Advance's principal investigated whether he could object to the small business loan which helped finance Accuform's start-up and whether the financial disclosures made by Accuform's principal were public records which could be inspected. (6) The information Advance seeks from inspection of Accuform's books and records is highly proprietary and, in the hands of a determined competitor such as Advance, would permit it to underbid Accuform. Continued underbidding could drive Accuform out of business. (7) Nothing in the record suggests that there is any present market for Accuform's stock. Valuing a stock does not create a market for a minority interest with no control. Finding a market for such an interest is very difficult. (8) Advance has a minimal investment in Accuform.

With one exception, Advance does not challenge these findings but instead argues that the facts do not support the inference drawn by the circuit court. The exception is the court's finding that the information which Advance sought would permit Advance to drive Accuform out of business through an extended pattern of underbidding on Accuform's main product lines. Advance argues that the circuit court's finding in this respect is "totally a matter of speculation." We disagree. Had Advance been allowed to examine and extract information from Accuform's books and records, it would have had access to Accuform's general ledgers, payroll ledgers, purchase journals, a description of all assets of the corporation with depreciation schedules, and

accounts receivable and accounts payable with aging documentation. In short, Advance would have been able to assess Accuform's ability to withstand repeated underbidding by Advance on jobs in which they were competitors. The circuit court's finding is not clearly erroneous and we may not set it aside. Sec. 805.17(2), Stats.

The drawing of inferences from the facts is peculiarly the function of the trial court. If more than one inference may reasonably be drawn, we must accept the one drawn by the trial court. *C.R. v. American Standard Ins. Co.,* 113 Wis. 2d 12, 15, 334 N.W.2d 121, 123 (Ct. App. 1983). Advance challenges the inference drawn by the circuit court from the conduct of Advance's principal. However, "it is impossible sometimes to get at the real intention of [a] party, and we can only gather it from his acts." *Phillips v. Phillips,* 22 Wis. 246, [*256], 248, [*257] (1867). We conclude that the circuit court properly considered the acts and statements of Advance's principal who demonstrated a willingness to put Accuform's principal out of business. We conclude that the circuit court could reasonably infer from the prior conduct of Advance and its principal and the other facts and circumstances that Advance's true purpose for its inspection demand was to obtain a competitive advantage over Accuform.

III.

ALTERNATIVE OF PROTECTIVE ORDER

Advance argues that, in any event, the circuit court should not have dismissed its complaint but should have allowed its inspection and issued a protective order to

prohibit Advance from improperly using any information gained from examining and extracting from Accuform's books and records. Advance did not make its argument to the circuit court and has waived its right to appellate review of the issue. *See First Nat'l Bank of Appleton v. Nennig,* 92 Wis. 2d 518, 541, 285 N.W.2d 614, 625 (1979) (appellate court will not consider new grounds for relief which were not brought to trial court's attention).

## IV.

## BURDEN OF PROOF

Finally, Advance claims that Accuform had the burden of proving that Advance's inspection demand was made in bad faith. Advance did not raise this issue in the trial court and has waived its right to appellate review. *Nennig,* 92 Wis. 2d at 541, 285 N.W.2d at 625. We conclude that there is no reason to depart from the waiver rule in this case. Who has the burden of proving whether the shareholder has shown or failed to show a proper purpose for the shareholder's demand to inspect under sec. 180.43(2), Stats., is a vital issue. Note, 1942 Wis. L. Rev. at 296. This question should have been brought to the circuit court's attention at the outset of the trial so that the case would have been tried with the burden of proof properly assigned. In any event, we conclude that failure to allocate the burden of proof, if error, was harmless in this case. The circuit court's findings make clear that if the burden of proof was Accuform's, it carried that burden.

*By the Court.*—Judgment affirmed.