Susane E. STEGEMEIER and Diane E. Mulrooney, Plaintiffs–Below, Appellants,

v.

Anne M. MAGNESS, individually and as Co–Administrator of the Estate of A. Gray Magness, Deceased, and Donald L. Magness, individually and as Testamentary Trustee under the Will of A. Gray Magness, Deceased Defendants–Below, Appellees.

No. 143, 1998.

Supreme Court of Delaware.

Submitted: Jan. 27, 1999.
Decided: April 30, 1999.

Robert E. Schlusser (argued), Schlusser & Reiver, P.A., Wilmington, Delaware, for the Appellants.

David A. Jenkins (argued), Smith, Katzenstein & Furlow LLP, Wilmington, Delaware, for Appellee—Anne M. Magness.

William H. Sudell, Jr. (argued), and Denison H. Hatch, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for Appellee—Donald L. Magness.

Before VEASEY, Chief Justice, WALSH, HOLLAND, and HARTNETT, Justices, and BABIARZ, Judge, (sitting pursuant to Del. Const. Art. IV § 13(2)), constituting the Court en Banc.

HARTNETT, Justice, for the majority.

We find that the Court of Chancery erred when it found, after trial, that Anne Magness, one of the two co-administrators of the will of A. Gray Magness, and Donald Magness, the trustee of the residuary trust created by the will, did not breach their fiduciary duty when they conveyed the real estate that was to be part of the corpus of the residuary trust to a corporation owned by them. We further find that the breaches of fiduciary duty were not cured because the other co-administrator, who was disinterested in the sale, joined in the deeds. We also find that the trial court incorrectly placed the burden of persuasion on the plaintiffs to show that the sale prices of the real estate transactions were fair. Accordingly, we reverse and remand this matter to the Court of Chancery for further proceedings.

## I. Facts and Procedural History

A. Gray Magness died testate on December 17, 1980. In his will he named his brother, Donald Magness, to be the trustee of two testamentary trusts established under the will. The first is a marital trust for the benefit of Anne Magness, the decedent's widow, and the other is a residuary trust. Anne was named the income beneficiary of the residuary trust for life. Upon Anne's death the remainder of the residuary trust is to be divided among A. Gray Magness' six daughters. Three of the beneficiaries are the daughters of Mr. Magness and Anne and each have a 25⅓% interest in the residuary trust. Mr. Magness' other three daughters, from a previous marriage, are each entitled to a 8% interest. Charles Allmond, III, Esquire [1] and Anne Magness were appointed as co-administrators c.t.a. of Mr. Magness' will. The will made certain specific bequests and the balance of the assets was to be divided into equal portions to fund the two trusts. The martial trust is not in issue in this proceeding.

In addition to other property not at issue, Mr. Magness owned, at his death, 171 lots and approximately 74 acres of adjacent undivided land in a New Castle County real estate development known as Harmony Crest [2] and 83% of the stock of Magness

---

1. Bayard W. Allmond was named executor by the will of A. Gray Magness; however, he renounced his appointment due to failing health. Mr. Allmond's son, Charles Allmond, III agreed to serve as co-administrator c.t.a. (*cum testamento annexo* or administrator with the will annexed) with Anne Magness.

2. The 171 lots were located in Harmony Crest, Sections I and II and the 74 acres were located

Construction Company.[3] Donald Magness owned the other 17% of the stock in the company. Upon the death of A. Gray Magness, title to the real estate vested in Donald Magness as the trustee of the residuary and marital trusts, subject, however, to a power of sale granted in the will to the administrators.

Because of the extremely depressed residential construction market during the early 1980s, Magness Construction Company was experiencing financial difficulties. This forced the estate to seek to liquidate some of the corporate land to raise the funds necessary to pay corporate debts. Although the lots were listed for sale with Jack Stoltz, a Wilmington real estate agent, the efforts to sell the land were unsuccessful. On behalf of the Company, Donald Magness also attempted to obtain mortgage loans from several banks to meet its financial obligations. The banks consistently refused to extend mortgage financing.

On November 4, 1982, Anne Magness and Donald Magness formed a new corporation, Magness Builders, Inc., after one of the banks, Colonial Mortgage, suggested that the possibility of financing new home construction would be increased if a new debt-free corporation was formed specifically to apply for and carry construction loans. Donald was issued 51% and Anne 49% of the corporation's stock. Donald proposed that the estate sell the Harmony Crest property to the new corporation at the price he offered. Shortly after the formation of the new corporation, Charles Allmond, III and Anne Magness, as co-administrators of the estate, accepted the offer and contracted to sell some of the lots to Magness Builders, Inc., and over the next six years, the co-administrators sold all of the land to the company. The purchase price of each sale was secured by a purchase money mortgage to the estate. Although, Magness Builders, Inc. made payments on the principal debt, it did not make any interest payments required by the financing agreements until 1988 when it paid a lump sum.

In five separate transactions, the estate sold approximately 409 lots to Magness Builders, Inc. for approximately $2,062,500.[4] Magness Builders, Inc. built homes on the lots which it had purchased from the estate and sold the homes to third-party purchasers. Neither Stegemeier or Mulrooney, two of the three residuary beneficiaries who are each entitled to an 8% interest in the residuary trust created under the will, was advised of the sales nor given the opportunity to consent to the transactions.[5]

In January 1993, Stegemeier and Mulrooney brought this action in the Court of Chancery alleging that Anne M. Magness and Charles M. Allmond, III, as co-administrators of the estate, and Donald L. Magness, as testamentary trustee, breached their fiduciary duties to the beneficiaries. In September 1996, the parties filed cross-motions for summary judgment and the Court of Chancery granted the defendants' motion for partial summary judgment in a Memorandum Opinion dated September 20, 1996.[6] The court dismissed Charles M. Allmond, III from the suit because Stegemeier and Mulrooney did not seek to impose any liability against him.

in what eventually became Harmony Crest, Section III.

3. Originally there was a dispute whether the estate owned 83% or 95% of Magness Construction Company, however, the parties stipulated in a pretrial order that the estate owned 83% and Donald Magness owned 17%.

4. These figures are derived from the parties' Pretrial Stipulation and Order. The sale price of the lots ranged from $3,500 to $6,500 each. The sales occurred as follows: December 29, 1982—fifty-five lots for $3,500.00 each; July 26, 1983—fifty-five lots for $4,000.00 each; December 20, 1984—fifty-four lots for $4,500.00 each; September 24, 1986—one hundred lots for $5,000.00 each; and October 11, 1988—seventy-five lots for $6,000.00 each and seventy lots for $6,500.00 each.

5. The residuary and marital trusts were not funded until 1989. Each trust received a portion of the stock in Magness Construction Company. Upon its funding, the marital trust was immediately disbursed to Anne Magness. The residuary trust was funded, in part, by the outstanding purchase money mortgages for the real estate sales to Magness Builders, Inc.

6. *Stegemeier v. Magness*, Del.Ch., C.A. No. 12845–NC, 1996 WL 549832 (Sept. 20, 1996) (Mem.Op.).

The court also found that Stegemeier and Mulrooney had no standing to assert a breach of fiduciary duty claim to recover profits earned by the development and sale of the land purchased from the estate because Anne Magness was the sole income beneficiary of the trust. Relying on the income allocation rule, the trial court found that any profits derived from Magness Builders' sale of the land in the ordinary course of business would be considered dividends and therefore solely trust income. These holdings are challenged in this appeal.

Also challenged are the Court of Chancery's holdings after trial. The court, in its final Memorandum Opinion dated January 7, 1998,[7] held that Stegemeier and Mulrooney's request for damages or rescission was denied and found that neither Anne nor Donald had engaged in self-dealing. The Court of Chancery also held that no beneficiary could have suffered any financial loss because the real estate was sold for a fair price.

## II. Claims of Appellants

Stegemeier and Mulrooney, plaintiffs below-appellants, assert error on four issues. First, they claim that the appropriate method to determine the existence of self-dealing by a trustee is whether the fiduciary had a personal interest in the transaction. They, therefore, argue that the trial court erred in finding that Donald L. Magness did not commit a breach of fiduciary duty because he was not on both sides of the transaction. Second, they argue that the trial court improperly applied the fiduciary principles of corporate law instead of the principles of trust law in finding that Anne Magness as co-administrator did not engage in self-dealing because the co-administrator, Mr. Allmond, who joined in the deed, was disinterested in the transaction. Third, they argue that even if corporate fiduciary principles apply, the court incorrectly found that Mr. Allmond was a disinterested co-fiduciary because he represented the estate and Magness Builders, Inc. in the real estate transactions. Lastly, Stegemeier and Mulrooney contend that by granting partial-summary judgment to the defendants, the Court of Chancery erred in finding that Stegemeier and Mulrooney had no standing to claim the profits earned by Anne and Donald from their self-dealing because Anne was the sole income beneficiary of the trust in question.

## III. Standard and Scope of Review

■ In an appeal from a decision in the Court of Chancery, we review conclusions of law de novo.[8] The trial court's factual findings, however, will be accepted "[i]f they are sufficiently supported by the record and are the product of an orderly and logical deductive process."[9] When reviewing decisions based on the live testimony of witnesses, determinations of credibility, and expert witness presentations, this Court affords the trial court's decision substantial deference.[10]

## IV. The Fiduciary Duty of a Trustee Not to Purchase Trust Property

■ The trial court held "[t]o be found culpable of self-dealing, a defendant fiduciary must have had the ability to cause the challenged transaction to occur."[11] In making that finding it relied on the law relating to corporate fiduciaries.[12] The Court of Chan-

7. *Stegemeier v. Magness*, Del.Ch., C.A. No. 12845–NC, 1998 WL 8851 (Jan. 7, 1998) (Mem. Op.). The Court of Chancery originally issued an opinion on January 5, 1998. A revised opinion was issued on January 7, 1998.

8. *Emmons v. Hartford Underwriters Ins. Co.*, Del. Supr., 697 A.2d 742, 744 (1997).

9. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671, 673 (1972).

10. *Cinerama, Inc. v. Technicolor, Inc.*, Del.Supr., 663 A.2d 1156, 1179 (1995); *see, Kahn v. House-hold Acquisition Corp.*, Del .Supr., 591 A.2d 166, 175 (1991); *Nixon v. Blackwell*, Del.Supr., 626 A.2d 1366, 1378 n. 16 (1993) ("This Court respects and gives deference to findings of fact by trial courts when supported by the record, and when they are the product of an orderly and logical deductive reasoning process, especially when those findings are based in part on testimony of live witnesses whose demeanor and credibility the trial judge has had the opportunity to evaluate.").

11. *Stegemeier v. Magness*, Del.Ch., C.A. No. 12845–NC, 1996 WL 549832 (Sept. 20, 1996), Mem.Op. at 8.

12. *Sinclair Oil Corp. v. Levien*, Del.Supr., 280 A.2d 717, 720 (1971); *David J. Greene & Co. v.*

cery found that Donald Magness did not breach his fiduciary duty because he did not have the power to cause the sale of the land and therefore did not stand on both sides of the transaction.[13] The trial court, again relying on corporate law, further concluded that Anne Magness could not be held culpable of self-dealing because she, as one co-administrator, could not have unilaterally caused the sale of the land [14] and Mr. Allmond, the other co-administrator, was disinterested and independent.[15] Because the court's finding that Mr. Allmond was disinterested and independent is sufficiently supported by the record and is the product of an orderly and logical deductive process, we will not disturb that finding.[16] Because, however, we decline to extend corporate fiduciary legal principles to a claim of breach of fiduciary duty as to a trust or estate, we find that Mr. Allmond's disinterest in the transaction to be irrelevant to Donald or Anne Magness' culpability.

## V. The Correct Standard to be Applied to a Claim of Breach of Fiduciary Duty

■ The trial court incorrectly equated the standard of fiduciary duty of a corporate director with that of a trustee of a trust.[17] The absolute prohibition under common law against self-dealing by a trustee has been modified in the corporate setting to offer a safe harbor for the directors of a corporation if the transaction is approved by a majority of disinterested directors.[18] Transactions approved by the directors are therefore not voidable because there are interested directors, if a committee of disinterested directors approves the transaction.[19] In such a case the directors are protected by the business judgment rule.[20] If, however, the transaction is not approved by the requisite number of disinterested directors, the directors must prove that the transaction was entirely fair.[21] Defendants argue that there is no distinction between the law of self-dealing whether corporate law or trust law is involved because the type of the transaction does not change the nature of the act. That argument is not persuasive.

■ In *Oberly v. Kirby*, this Court made it clear that in conducting a review of allegations of self-dealing, the standards of trust law and corporation law are different.[22] In that decision, this Court refused to apply the stricter standards of trust law to the decision of the directors of a nonstock, charitable corporation to engage in a transaction where the directors had a personal interest.[23] Because the grantor chose the form of a charitable corporation over a charitable trust, this Court applied the less stringent restrictions of corporate law.[24] Which standard will apply, therefore, is governed by the legal for-

*Dunhill Int'l., Inc.*, Del.Ch., 249 A.2d 427, 430–31 (1968).

13. *Stegemeier v. Magness*, Del.Ch., C.A. No. 12845–NC, 1996 WL 549832 (Sept. 20, 1996), Mem.Op. at 8–9; *Stegemeier v. Magness*, Del.Ch., C.A. No. 12845–NC (Jan. 7, 1998), Mem.Op. at 9.

14. *Stegemeier v. Magness*, Del.Ch., C.A. No. 12845–NC, 1996 WL 549832 (Sept. 20, 1996), Mem.Op. at 9 (citing *Bernhardt v. Luke*, Del. Supr., 126 A.2d 556, 559 (1956); *Sinclair Oil Corp. v. Levien*, 280 A.2d at 720; *David J. Greene & Co. v. Dunhill Int'l., Inc.*, 249 A.2d at 430–31).

15. *Stegemeier v. Magness*, Del.Ch., C.A. No. 12845–NC (Jan. 6, 1998), Mem.Op. at 9–11 (finding that because Mr. Allmond's fees were de minimis, only $7,000 in six years, that he was independent and not subject to Anne Magness' influence).

16. *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d at 1180; *Nixon v. Blackwell*, 626 A.2d at 1378 n. 16; *Levitt v. Bouvier*, 287 A.2d at 673.

17. *Oberly v. Kirby*, Del.Supr., 592 A.2d 445, 466–67 (1991).

18. 8 *Del.C.* § 144; *Oberly v. Kirby*, 592 A.2d at 466–67.

19. *Oberly v. Kirby*, 592 A.2d at 466.

20. *Id.*

21. *Id.* at 466–67.

22. *Id.* The premise that the fiduciary duty of loyalty is more relaxed in corporate law was recognized in Delaware as early as 1911. *Eberhardt v. Christiana Window Glass Co.*, Del.Ch., 81 A., 774, 778 (1911) ("There is in fact, an apparent divergence in the strictness of the rule [of self-dealing] respecting the dealings of the directors of the corporation with the corporation respecting its property.").

23. *Oberly v. Kirby*, 592 A.2d at 466–67.

24. *Id.*

mat the grantor chose to accomplish his purposes.[25] Because A. Gray Magness chose a trust to carry out his testamentary intent, the stricter principles of trust law must apply to the challenged transaction.

. Unlike corporate law, "[u]nder trust law, self-dealing on the part of a trustee is virtually prohibited."[26] Originally under Delaware law "a trustee [was] prohibited absolutely from purchasing the property entrusted to his care."[27] Under current Delaware law:

> [a]n interested transaction is not void but is voidable, and a court will uphold such a transaction against a beneficiary challenge only if the trustee can show that the transaction was fair and that the beneficiaries consented to the transaction after receiving full disclosure of its terms. However, a court of equity has the power to approve a transaction on behalf of the trust's beneficiaries if they are not *sui juris* and if it finds the transaction to be in their best interest.[28]

Although a sale by an interested trustee is no longer automatically void, even under the more relaxed rule, a court will carefully scrutinize all the attendant circumstances before it can find that the sale is not detrimental to the trust.[29] Courts have recognized that a sale by a trustee with a personal interest is not voidable, if there is a before-the-fact approval by the grantor, the court, or the beneficiaries.[30] None of these exceptions is present here, however, and the transaction would be voidable at the instance of the beneficiaries, if the land had not been sold to bona fide purchasers.

 Some authorities have held that good faith and the payment of full consideration is irrelevant as a trustee's defense.[31] Under those authorities, the evidence of a fair price is not even admissible on the issue of whether the transaction is voidable.[32] In any case, the burden of persuasion to justify the upholding of a transaction by an interested trustee rests on the fiduciary, not the beneficiary.[33]

---

**25.** *Id.* at 467 ("One of the cardinal principles of trust law is that the intention of the settlor is paramount.").

**26.** *Id.* at 466; *Vredenburgh v. Jones*, Del.Ch., 349 A.2d 22, 33 (1975); *In re Thomas*, Del.Supr., 311 A.2d 112, 114 (1973).

**27.** *Wilmington Trust Co. v. Carrow*, Del.Ch., 125 A. 350, 352 (1924). *See also, Vredenburgh v. Jones*, 349 A.2d at 33; *In re Thomas*, 311 A.2d at 114; *Downs v. Rickards*, Del.Ch., 4 Del.Ch. 416, 430 (1872).

**28.** *Oberly v. Kirby*, Del.Supr., 592 A.2d 445, 466 (1991) (citations omitted).

**29.** *Id.; In re Thomas*, 311 A.2d at 114–15 (upholding sale of property when the grantor had entered into the sales agreement and fixed the terms and left trustee with no potential for conflict); *Equitable Trust Co. v. Gallagher*, Del.Supr., 34 Del.Ch. 249, 102 A.2d 538, 545 (1954); *Vredenburgh v. Jones*, 349 A.2d at 33.

**30.** *In re Thomas*, 311 A.2d at 114–15; *Oberly v. Kirby* 592 A.2d at 466; *Vredenburgh v. Jones*, 349 A.2d at 33; 76 Am.Jur.2d *Trusts* § 578 (1992) ("[I]n the absence of special circumstances, the purchase of trust property by the trustee, without the knowledge or consent of the beneficiary, or without authorization by a court having jurisdiction in the matter, is improper and, althoughenot [sic] void is voidable at the instances of beneficiaries of the trust upon taking proper steps to

disaffirm it, irrespective of the good faith of the trustee, profit or advantage to him for the transaction, or loss or prejudice to the trust estate.") (footnotes omitted).

**31.** *Vredenburgh v. Jones*, 349 A.2d at 33; *Eberhardt v. Christiana Window Glass Co.*, 81 A. at 777–78; 76 Am.Jur.2d *Trusts* § 580 (1992) ("The rule against purchase of trust property by the trustee conclusively presumes in effect unfair dealing from the self-dealing, and it is immaterial to the invalidity of the purchase by the trustee that in fact he acted in good faith, gave full consideration, or derived no profit or advantage from the transaction. It is likewise immaterial that the trust estate in fact sustained no loss or prejudice, for the court acts in such cases not so much to protect the particular cestui que trust as to uphold and enforce a sound principle of public policy. Thus evidence that the sale was fair and for the best price obtainable is not admissible."). (footnotes omitted); Restatement (Second) of Trusts § 170 cmt. b (1959) ("It is immaterial that the trustee acts in good faith in purchasing trust property for himself, and that he pays a fair consideration.").

**32.** *Vredenburgh v. Jones*, 349 A.2d at 33; *Eberhardt*, 81 A. at 778; 76 Am.Jur.2d *Trusts* § 580 (1992); Restatement (Second) of Trusts § 170 cmt. b (1959).

**33.** *Oberly v. Kirby*, 592 A.2d at 466; *Vredenburgh v. Jones*, 349 A.2d at 33.

All the cases relied upon by the Court of Chancery in finding against Stegemeier and Mulrooney involved corporate fiduciaries.[34] In *Sinclair Oil Corp. v. Levien,* this Court held that, although a breach of fiduciary duty by the directors was claimed, the burden of proof will shift to a parent to prove intrinsic fairness in dealing with its subsidiary:

> only when the fiduciary duty is accompanied by self-dealing—the situation when a parent is on both sides of a transaction with its subsidiary. Self-dealing occurs when the parent, by virtue of its domination of the subsidiary, causes the subsidiary to act in such a way that the parent receives something from the subsidiary to the exclusion of, and detriment to, the minority stockholder of the subsidiary.[35]

■ Defendants assert that because Donald Magness did not stand on both sides of the challenged transaction he did not engage in self-dealing and under the rule applied in *Sinclair,* he therefore did not breach his fiduciary duty to the beneficiaries. The principles of trust law, however, impose a higher standard. Under trust law, self-dealing occurs when the fiduciary has a "personal interest in the subject transaction of such a substantial nature that it *might* have affected his judgment in material connection."[36]

■ Under trust law, it is irrelevant that Donald and Anne did not have the exclusive power to sell the land. Even if a sale of trust property is conducted by someone else, a trustee can not purchase the trust property.[37] Defendants assert that because Donald Magness never had the "power to sell", he had no obligation to refrain from purchasing trust property. The non-existence of a pow-

er of sale is not the test, however. The rule is well established that a person acting in a fiduciary capacity cannot also act for himself where he has duties to perform for another, "[s]pecifically [that] one who is acting in such a position of trust cannot be a purchaser from the estate for which he is trustee, however fair the terms of sale or however honest the circumstances of an individual transaction may be."[38]

The Restatement (Second) of Trusts also supports this principle, even where a trustee does not control the sale:

> A trustee with power to sell trust property is under a duty not to sell to himself either by private sale or at auction, whether the property has a market price or not, and whether or not the trustee makes a profit thereby. It is immaterial that the trustee acts in good faith in purchasing trust property for himself, and that he pays a fair consideration.
>
> The trustee cannot properly purchase trust property for himself even though he does not make the sale.[39]

This principle was established not only "to prevent fraud in the management of the sale, but to the broader object of relieving trustees from any possible conflict between duty and self interest."[40] There are considerations other than unfairness of the actual sale, such as the trustee may have obtained important information regarding the value of the property that he has kept to himself.[41] Although Donald may not have been both the buyer and the seller of the property, he, as the trustee of the residuary trust, had a fiduciary duty not to purchase trust property

**34.** *Sinclair Oil Corp. v. Levien,* Del.Supr., 280 A.2d 717, 720 (1971); *David J. Greene & Co. v. Dunhill Int'l., Inc.,* Del.Ch., 249 A.2d 427, 430–31 (1968).

**35.** *Sinclair Oil Corp. v. Levien,* 280 A.2d at 720.

**36.** *Vredenburgh v. Jones,* 349 A.2d at 39.

**37.** *Downs v. Rickards,* 4 Del.Ch. 416, 429, 433 (1872). ("The principle upon which the disqualification of the trustee to buy the trust estate rests, is a very broad one, and extends, as well to sales conducted by others, as to those conducted by himself. The principle is that one shall not act

for himself in any matter with respect to which he has duties to perform or interests to protect for another.").

**38.** *Vredenburgh v. Jones,* 349 A.2d at 33; *Eberhardt v. Christiana Window Glass Co.,* 81 A. at 779–80.

**39.** Restatement (Second) of Trusts § 170 cmt. b (1959).

**40.** *Downs v. Rickards,* 4 Del.Ch. 416, 430 (1872).

**41.** *Id.* at 435.

regardless of whether he executed the deed to the property.[42]

Defendants assert that because Charles Almond was disinterested in the sale, his executing the deed cured any breach of fiduciary duty. This premise is without merit because it is again predicated on fiduciary principles of corporate law, not trust law.[43] Defendants also rely on *Bernhardt v. Luke*.[44] While *Bernhardt* holds that a trustee does not have the power to act without the other trustees it does not address self-dealing.[45] *Bernhardt*, therefore, does not support the argument that existence of a disinterested co-fiduciary excuses a breach of the fiduciary duty of loyalty.[46] Under trust law, "[w]here there are several trustees, one of them cannot properly purchase trust property for himself, although his co-trustees are not personally interested in the purchase and consent to the sale."[47] Therefore, execution of the deed by Mr. Allmond did not cure the breach of fiduciary duty.[48]

A trustee is under a duty to " 'participate in the administration of the trust and to use reasonable care to prevent a co-trustee from committing a breach of trust.' "[49] Although Mr. Allmond was disinterested in the transaction, he knew of Anne and Donald's interest in the corporation that purchased the property and he should have refused to enter into the sale without prior notice to the beneficiaries or court approval.

While the absolute prohibition of a trustee purchasing trust property has been modified, the purpose of the rule remains—to relieve the trustee of any claim of a conflict of interest, and to prevent fraud through imposing strict prohibitions of self-dealing on the basis that the fraud involved in such transaction is difficult to discern.[50] The few recognized exceptions do not detract from this purpose. We, therefore, decline to extend the less strict corporate fiduciary principles to the law of trusts.

Defendants also assert that this sale was necessary to save trust assets because of the decline in the real estate market and the heavy financial debt of Magness Construction Company. While this reasoning may offer an explanation for the need to sell the land and may affect any remedy, it does not excuse a breach of fiduciary duty. The co-administrators should have resigned, requested court approval, or sought the beneficiaries' consent.

## VI. The Remedy

Although we hold that the challenged transaction would ordinarily be voidable by the beneficiaries (at least if they all sought to invalidate it), it is clear that the transaction can not be rescinded because Magness Builders, Inc. has built homes on the land and sold all of it to third parties. Therefore the issue is whether Stegemeier and Mulrooney could be entitled to any rescissory damages.

Stegemeier and Mulrooney assert that they are entitled to the profits made by Magness Builders Inc. Their position is legally well founded:

The beneficiary is entitled to any profit made by the trustee [who is guilty of a breach of fiduciary duty], and may recover from the trustee the amount for which he

42. *Id.* at 429–30, 433–35; *Vredenburgh v. Jones,* 349 A.2d at 33.

43. *Sinclair Oil Corp. v. Levien,* 280 A.2d at 720; *David J. Greene & Co. v. Dunhill Int'l., Inc.,* 249 A.2d at 430–31.

44. Del.Supr., 126 A.2d 556, 559 (1956).

45. *Id.*

46. *Id.*

47. Restatement (Second) of Trusts § 170 cmt. b (1959); *see Eberhardt v. Christiana Window Glass Co.,* 81 A. at 778; *Tracy v. Central Trust Co.,* 327 Pa. 77, 192 A. 869, 870 (1937).

48. *Eberhardt v. Christiana Window Glass Co.,* 81 A. at 778; *Tracy v. Central Trust ·Co.,* 192 A. at 870.

49. *Tracy v. Central Trust Co.,* 192 A. at 870 (quoting Restatement (First) of Trusts § 184 (1935) (finding that the participation of independent trustees in a sale did not prevent them from bringing an action to rescind a transaction where another trustee sold his individual property to himself as trustee)).

50. *Eberhardt v. Christiana Window Glass Co.,* 81 A. at 778; *Vredenburgh v. Jones,* 349 A.2d at 33; *Downs v. Rickards,* 4 Del.Ch. at 430.

sold the property to another, less the expenses of the trustee incurred in the resale or in perfecting title and the amount of taxes paid by the trustee after his purchase of the property. The rule that a fiduciary cannot profit personally from dealings with the trust property and will be held accountable for all profits from such dealings applies although the fiduciary acquiring the property for himself is only one of two or more fiduciaries and although the co-fiduciaries fixed or consented to the purchase price.[51]

It is clear that if Magness Builders, Inc. had resold the land without making any improvements, the trust would be entitled to any profit it made from the sale.[52] The Court of Chancery, however, held that Magness Builders, Inc. purchased the lots for their true fair value and then made improvements to the land, including erecting houses. If this is correct, any profit from the sale of the improved lots to the third parties was due to the improvements made by Magness Builders, Inc. and not from the profit on the sale of the land alone.

If it had been shown at trial that the land was sold for less than fair market value the trust would be entitled to receive the difference between the fair market value and the purchase price.[53] The Court of Chancery

found, however, that Magness Builders, Inc. paid the fair market value for the land.[54]

## VII. Burden of Persuasion as to the Value of the Land

■ The Court of Chancery found that because Stegemeier and Mulrooney had not proven self-dealing that it was their burden to show that the estate did not receive the fair market value for the sale of the land.[55] Because we find that the trial court erred in finding there was no breach of fiduciary duty, we conclude that it was error for the Court of Chancery to have placed the burden of persuasion on Stegemeier and Mulrooney to establish the fair market value of the land.

■ Although the Court of Chancery erred in placing the burden of persuasion to show that the sale prices were not fair upon Stegemeier and Mulrooney, this error might not change the result. The evidence on fair market value consisted of an expert for each side. In reviewing the opinion of an expert witness as to the value of real estate the most significant factor is the value of the comparable sales.[56] This factor is not dependent on which party has the burden of persuasion but rather is on other factors, such as the validity of the comparable sales examples presented. We, therefore, remand this matter to the Court of Chancery for it to reconsider whether the real estate at issue

**51.** 76 Am.Jur.2d *Trusts* § 578 (1992); Restatement (Second) of Trusts § 205 cmt. h (1959) ("The trustee is chargeable with any profit made by him through the improper disposition or use of trust property.").

**52.** *Eberhardt v. Christiana Window Glass Co.,* Del.Ch., 81 A. 774, 778 (1911); Restatement (Second) of Trusts § 206 cmt. b (1959) ("If the trustee has resold the property at a profit, the beneficiary can compel him to account for the profit.").

**53.** *See, Lockwood v. OFB Corp.,* Del.Ch., 305 A.2d 636, 638 (1973); Restatement (Second) of Trusts § 205 cmt. d (1959) ("*Sale for less than value.* If the trustee is authorized to sell trust property, but in breach of trust he sells it for less than he should receive, he is liable for the value of the property at the time of the sale less the amount which he received."); *See* also, Restatement (Second) of Trusts § 206 cmt. b (1959) ("If the trustee in breach of trust sells trust property to himself individually, and the price paid by him was less than the value of the property at the

time when the trustee purchased it, the beneficiary can compel him to pay the difference; or, at his option, the beneficiary can set aside the sale and compel the trustee to reconvey the property and account for any income which he has received therefrom, in which case the trustee will be entitled to receive from the trust estate the amount which he paid for the property and income thereon actually received by the trust estate, if any; or he can compel the trustee to offer the property for sale and if it is sold for more than the amount which the trustee paid for it, compel him to account for the excess.").

**54.** *Stegemeier v. Magness,* Del.Ch., C.A. No. 12845–NC, 1998 WL 8851 (Jan. 7, 1998), Mem. Op. at 11–14. It is unclear whether the Vice Chancellor considered separately each transaction in establishing the fairness of the sale price.

**55.** *Id.* at 11.

**56.** *See United States v. Trout,* 5th Cir., 386 F.2d 216 (1967).

was sold for a fair price. If the Court of Chancery again determines that the real estate was sold for its fair market value, any errors of the Court of Chancery may be harmless because the rescissory damages might be zero.

## VIII. Plaintiffs' Standing

In a pre-trial order, the trial court found that Stegemeier and Mulrooney had no standing to receive damages resulting from the sales of the land because Anne Magness was the sole income beneficiary of the trust. The Court of Chancery applied the income allocation rule finding that any profits made by Magness Builders, Inc. would be considered dividends and therefore must be income. The trial court rejected Stegemeier and Mulrooney's argument to apply a diverted profit rule. Stegemeier and Mulrooney asserted that 12 *Del.C.* § 3525, known as the equitable income rule, allows the income beneficiary to claim 4% of the probate income as income with the rest remaining as principal. We decline to discuss this issue now, however, because if the Court of Chancery on remand again decides not to award any damages to Stegemeier and Mulrooney, this issue might be moot.

## IX. Conclusion

We find that Court of Chancery erred in finding that trustee Donald Magness and co-administrator Anne Magness did not breach their fiduciary duties of loyalty and in applying corporate principles of self-dealing to non-corporate trust law. We also find that the trial court improperly assigned to Stegemeier and Mulrooney the burden of persuasion to show that the sales price of the lands was unfair. We therefore **REVERSE** in part and **REMAND** to the Court of Chancery to redetermine whether the real estate in question was sold for a fair price to Magness Builders Inc. We leave to the Vice Chancellor's discretion whether additional evidence would be helpful to his reconsideration on remand of the value of the property.

BABIARZ, Judge, dissenting:

The Court here decides that the Court of Chancery erroneously applied corporate law principles to this trust case. Applying Delaware trust law, the Court holds that the defendants breached their duties as trustees by purchasing trust assets for a corporation owned by them individually. The net effect of the ruling, with which I agree, is simply to reverse the burden of proof applied by the Court of Chancery to the central factual issue in the case, namely, whether the trust received fair market value for the land sold to the corporation.

Consistent with its view of the law, the Court of Chancery imposed the burden on the plaintiff beneficiaries to prove that the trust did not receive fair market value. Under our ruling, the trustees have the burden to prove that fair market value was paid. Because of the misallocation of the burden of proof, the majority remands the case for a reconsideration of the issue.

The allocation of the burden of proof is critical in a jury case, since a reviewing tribunal has no way of knowing whether that allocation was crucial to the verdict. A jury verdict may be based on a default in evidence by the party having the burden or a judgment that the evidence presented by the non-burdened party is in fact stronger. In a non-jury case, however, the appellate court usually has the benefit of an opinion from the trial court and thus has a basis for assessing whether a misallocation of the burden of proof was outcome determinative. In a non-jury case an appellate court's analysis should not stop with a determination that the trial court incorrectly assigned the burden of proof. It must go on to consider whether that error resulted in *actual* prejudice to the party erroneously assigned the burden.[57]

57. *See, e.g., Matter of Adoption of Baby Boy Irons,* 235 Kan. 540, 684 P.2d 332, 340 (1984). ("[This] error does not necessarily warrant reversal as it would in a jury trial. The record must be examined to determine if the evidence shows the appellees sustained the burden of proof which should have been placed upon them at trial ."); *Advance Concrete Form, Inc. v. Accu-*

form, *Inc.,* 158 Wis.2d 334, 462 N.W.2d 271, 277 (1990) ("We conclude that failure to allocate the burden of proof, if error, was harmless in this case. The circuit court's findings make clear that if the burden of proof was [appellee's], it carried that burden."); *Waggoner v. Johnston,* Okla.Supr., 408 P.2d 761, 768–769 (1965) ("This error is harmless in this case in that it is clear

In the instant case the Court of Chancery states in its opinion that the plaintiff beneficiaries failed to sustain their burden of proof. However, to focus on this statement as a basis for remand is like professing to understand *War and Peace* after reading its first page. In his opinion, the Vice Chancellor discusses and analyzes the evidence of valuation presented by each side and finds that the defendants' evidence is more persuasive.

The initial valuation issue presented was whether the residential lots purchased by the corporation were improved with water and sewer lines, streets and curbs. The Vice Chancellor considered the evidence advanced by each side and was "persuaded by the defendants' evidence that only twelve of the lots were improved and that the balance were unimproved at the time of the sale."[58] Included in the evidence which the Vice Chancellor found persuasive was the testimony of an eyewitness, Charles Allmond, the co-administrator of the estate, who this Court agrees was disinterested and independent.

On the ultimate valuation issue, the Court of Chancery considered and evaluated the testimony of real estate appraisal experts proffered by each side. It concluded that the defendants' appraisal more accurately reflected the fair market value of the property. In this regard the majority notes:

> In reviewing the opinion of an expert witness as to the value of real estate the most significant factor is the value of the comparable sales. This factor is not dependent on which party has the burden of persuasion but rather is on other factors, such as the validity of the comparable sales examples presented.[59]

The Vice Chancellor engaged in precisely the analysis suggested by the majority. He found that the plaintiffs' appraisal rested on "comparable" sales of parcels of land which were "larger [than the lots involved here], developed for commercial use or improved."[60] He found no such deficiencies with regard to the defendants appraisal.

In short, the Court of Chancery found as it did *not* because the plaintiffs defaulted in meeting any burden of proof or because the evidence rested in a state of equipoise but because of the defendants' evidence was more persuasive. In other words the defendants prevailed on this issue because they sustained the burden of proof which should have been imposed on them in the first instance.[61] As a consequence the erroneous assignment of the burden of proof to the plaintiffs was harmless.

Regardless of the misallocation of the burden of proof, it is obvious that each side presented the Court of Chancery with the strongest evidence available to support their respective positions. That evidence was fairly and properly considered by the court which found in favor of the defendants. There is no good purpose to be served by a remand to see if the plaintiffs, who now do not have the burden of proof, can come up with some other evidence which will persuade the Court of Chancery to decide in their favor.

The Court of Chancery's conclusion that the trust received fair market value is supported by the record and is the product of an orderly and logical deductive process. Its judgment in favor of the defendants should be affirmed. I, therefore, respectfully DISSENT.

from the memorandum of the trial court ... that the ultimate finding of the court ... was based on evidence submitted by [the appellees] and not on the failure of the [appellants] to uphold the evidentiary burden originally placed on them"). *See also In the Matter of P.S. v. W.S.*, Ind.Supr., 452 N.E.2d 969, 976–77 (1983).

58. *Stegemeier v. Magness*, Del.Ch., C.A. No. 12845–NC, 1998 WL 8851 (Jan. 6, 1998), Mem. Op. at 12–13.

59. Majority opinion p. 566 (citation omitted).

60. *Id.* at 14.

61. *See, e.g., Baby Boy Irons*, 684 P.2d at 340; *Advance Concrete*, 462 N.W.2d at 277.